**L. & E. STIRN, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 27.

Circuit Court of Appeals, Second Circuit.

Nov. 6, 1939.

Andrew B. Trudgian, of New York City, for petitioner L. & E. Stirn, Inc.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On December 1, 1929, L. & E. Stirn, a partnership, acquired 4,636 shares of 7% cumulative preferred stock of Concordia-Gallia Corporation at a cost of $327,319.69. These shares of preferred stock represented 55.08% out of a total of 8,417 of such preferred shares issued and outstanding. On December 1, 1931, Concordia-Gallia issued to the partnership its 6% debenture bonds, having a par and fair market value of $463,600, in exchange for the 4,636 shares of 7% preferred stock and on the same date also issued to the partnership additional 6% debenture bonds of the par value of $36,400 upon payment in cash to that amount. As a result of the foregoing transactions the partnership received $500,-000 debenture bonds. One-fifth of the aggregate total of these bonds was to become payable one year from the date of issuance and each successive fifth was to mature yearly thereafter until the bonded indebtedness should be paid in full.

The issue of 6% debenture bonds was authorized by a resolution adopted on December 1, 1931, at a meeting of the preferred and common stockholders of Concordia-Gallia, that such bonds should be issued "upon the payment of the par value thereof to the corporation, or in the alternative upon the exchange for the seven per cent preferred stock owned by L. & E.

Stirn, such exchange to be made at the par value of such stock at the rate of one hundred ($100) dollars per share". At the same meeting of the stockholders of Concordia-Gallia the preferred stock was reduced by vote of all classes of stock from 10,000 to 4,000 shares, and its dividend rate was reduced from seven to six per cent. A certificate of such reduction was filed with the Secretary of State of New York. The 4,636 shares of 7% preferred stock surrendered by L. & E. Stirn in exchange for the debentures of the same par value were accordingly retired by Concordia-Gallia.

It is evident from what we have already said that the retirement of the 4,636 shares of preferred stock was not a retirement pro rata of the holdings of all the preferred stockholders, but only of the holdings of preferred stock of the partnership.

On June 3, 1932, L. & E. Stirn, Inc., was incorporated under the laws of the State of New York. The partnership of L. & E. Stirn subsequently transferred to this corporation various assets including the $500,000 debenture bonds which it had received on or about December 1, 1931 and received the stock of the corporation in exchange. Under Section 112(b)(5) of the Revenue Act of 1928, 26 U.S.C.A. § 112(b)(5), this transfer was a non-taxable exchange.

On September 30, 1932, all the debentures held by L. & E. Stirn, Inc., which then had a fair market value as well as a par value of $500,000, were retired under an agreement between Concordia-Gallia, the obligor, and the taxpayer L. & E. Stirn, Inc., the holder, by applying them against an indebtedness of the latter to Concordia-Gallia which was then in excess of that amount.

The question before us is whether the basis for computing gain or loss to the taxpayer on the $463,600 of debentures, surrendered for retirement on September 30, 1932, was the value of these bonds (that is to say, $463,600) when acquired by the partnership on December 1, 1931, or was the cost of the 4,636 shares of 7% preferred stock, purchased at $327,319.69, for which the debentures had been exchanged. If the latter sum was the proper basis, a taxable profit of $136,280.31 was realized by the taxpayer on September 30, 1932, out of the proceeds of the debentures then redeemed. The Commissioner held that the

cost of the 4,636 shares of 7% preferred stock to the transferor was the proper basis and accordingly assessed income taxes on the profit thus computed. The Board of Tax Appeals affirmed the Commissioner and determined a tax deficiency of $13,352.21 under his assessment, whereupon the taxpayer filed a petition to review the order of the Board.

■ We hold that the deficiency order of the Board should be reversed because the $463,600 of debentures issued to the partnership of L. & E. Stirn on December 1, 1931, in exchange for the preferred stock were not "securities" within the meaning of that word as used in Sections 112(b)(3) of the Revenue Acts of 1928 and 1932, 26 U.S.C.A. § 112(b)(3). A portion of the income for the fiscal year of the partnership beginning December 1, 1931, and ending November 30, 1932, is governed by the Act of 1928 and the remaining portion by the Act of 1932, but as each act contains like provisions relating to the issues before us we shall only refer to the provisions of the Act of 1928.

Section 112(b)(3) of the Act of 1928 reads as follows:

"(3) *Stock for stock on reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

Reorganization as used in Section 112 is defined by subdivision (i)(1)(C) of that section, 26 U.S.C.A. § 112(g)(1)(D), as meaning among other things "a recapitalization". We think that a "recapitalization" occurred in the present case when at the time of the surrender by the partnership of its preferred stock there was such a financial readjustment of Concordia-Gallia as to reduce that stock actually issued from 8,417 to 3,781 shares, to reduce the amount of that stock authorized to be issued from 10,000 to 4,000 shares and to reduce the rate of dividends payable thereon from 7% to 6%. The effect of the readjustment was to retire the 4,636 shares of preferred stock held by the partnership, to diminish the capital of Concordia-Gallia by $463,600 and to reduce the dividend rate. The readjustment substantially affected both the nature of the interest of the partnership of L. & E. Stirn

in Concordia-Gallia and that of the other stockholders as well by subjecting the corporation to a liability to the partnership as a creditor rather than as a preferred stockholder and by reducing the dividend rate on the remaining preferred stock. Even though Concordia-Gallia became a party to a reorganization on December 1, 1931, yet the gain of the partnership from the exchange of property was recognizable at that time and a profit was then taxable against it unless the exchange of its 4,636 shares of preferred stock was for "securities" within the meaning of Section 112(b)(3) of the Revenue Act of 1928, in which case the gain would not be then recognizable. Inasmuch as the preferred stock was exchanged solely for the debentures, the question arises whether such debentures were "securities" within the meaning of Section 112(b)(3).

In Commissioner v. Tyng, 2 Cir., 106 F.2d 55, 59, we held that certain unsecured bonds payable in twenty and forty years respectively were "securities" within the meaning of Section 112(b)(3) of the Revenue Act of 1928 and said that "the proper test as to whether bonds come within the meaning of 'securities' under Section 112(b)(3) is not whether they are secured or unsecured, but whether they represent a long or short term investment on the part of the transferor." We distinguished our earlier decision in Worcester Salt Co. v. Commissioner, 2 Cir., 75 F.2d 251, because the bonds there had involved a term of but five years and were accordingly held not to be "securities." In Scofield v. Le Tulle, 5 Cir., 103 F.2d 20, which we cited with approval in Commissioner v. Tyng, supra, $150,000 bonds out of a total of $750,000 were to mature in fourteen months but the remaining $600,000 became payable at the rate of $50,000 per year thereafter, thus rendering the entire issue completely redeemable in about thirteen years from the time of issue. In Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289, the bonds ran for a longer time than in the present case. The question is always whether bonds or notes which are exchanged represent an investment in the business of the transferee or are a practical substitute for a cash sale, as were the short term notes in Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, the longest of which became due in four months, or the notes running from one to fourteen months in Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937, or the five year bonds in Worcester Salt Co. v. Commissioner, 2 Cir., 75 F.2d 251.

In the case at bar the bonds not only had an average maturity of only two and one-half years but were all paid off within ten months. In our opinion they did not furnish a continuity of interest in the Concordia-Gallia Corporation sufficient to bring them within the meaning of "securities" as that word has been construed in the United States courts. In Helvering v. Watts, 296 U.S. 387, 389, 56 S.Ct. 275, 80 L.Ed. 289, the difference was made plain between obligations running for a considerable number of years and those payable within a short period and taken by the transferor not as an investment in the business of the transferee but as essentially a part of the purchase price. In Helvering v. Watts, supra, the rule of Pinellas Ice Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, was assumed to be the law and that decision was distinguished on the ground that there short term obligations were involved rather than bonds running for a considerable period. We find no justification in the authorities for treating bonds given as part of the purchase price for a transfer of property to a corporation as "securities" within the meaning of Section 112(b)(3) supra where, as in the case at bar, they have an average due date as short as two and one-half years. Indeed, the interpretation of the meaning of "securities" has been consistently against regarding such instruments as "securities" under the Revenue Act.

In view of the foregoing, the order of the Board of Tax Appeals should be reversed and the proceeding remanded with directions to determine no deficiency against the taxpayer.