REILLY OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19521. Promulgated December 15, 1949.

*L. Warren Baker, C. P. A.*, for the petitioner.
*Frost Walker, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The only question we have to decide in the instant case is the amount of depletion deduction which petitioner is entitled to receive in each of the taxable years 1943 and 1944.

Respondent in his determination of the deficiencies computed depletion on the percentage basis. He did this on his determination that the transactions by which petitioner acquired its oil properties amounted to a nontaxable reorganization and that by reason of that fact petitioner is required to take the basis of cost of its predecessor, which was only a nominal amount, and, therefore, petitioner gets a larger deduction from percentage depletion than it would from depletion based on cost.

Petitioner, on the other hand, contends that it acquired its oil properties in a transaction which was taxable to the transferor and, therefore, it is entitled to a basis of cost to it, which it alleges was $135,920.25, and that depletion based on cost is $4,587.25 greater than respondent has allowed for 1943 and $5,040.51 greater than respondent has allowed for 1944.

There are no differences between the parties on the basic facts. The only difference is the legal interpretation which is to be given to those facts.

It is clear, of course, that petitioner is a corporation resulting from the reorganization of its predecessor, Trapshooter Reilly Oil & Royalties Co. But not every reorganization comes within the nontaxable provisions of the statute. So our task is to examine the several provisions of the statute and determine whether the transfer by which petitioner acquired its properties was nontaxable, as respondent contends, or was taxable, as petitioner maintains.

We think the provisions of the statute which are applicable to the facts of the instant case are section 112 (a), (b) (3) and (4), (g) and (h) of the Internal Revenue Code.[1] It is also our view that the trans-

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

* * * * * * *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

* * * * * * *

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (l)) and in section 113 (other than subsection (a) (22))—

(1) The term "reorganization" means * * * (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the prop-

fer by the predecessor corporation through the trustee in bankruptcy to petitioner of the remainder of its assets falls within the provisions of 112 (b) (3) and/or (4) if the reorganization requirements of the statute have been met.

In arguing that the transfers were a reorganization within the provisions of section (g) and (h), respondent first contends that section 112 (g) (1) (C) is applicable. (C) reads: "the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation * * *." In arguing that the foregoing provision of the reorganization statute applies, it is respondent's contention that the several transactions detailed in our findings of fact should be viewed separately and that when so viewed petitioner acquired all the property of its predecessor corporation in exchange solely for all or part of its voting stock. It is our view that the several transactions can not properly be viewed separately, but must be viewed as integrated steps to effect the reorganization of the predecessor corporation. When this is done, it is clear that petitioner did not acquire substantially all the properties of the predecessor corporation; it acquired only a part of them, which part was much less than "substantially all." Therefore, we hold there was no reorganization under section 112 (g) (1) (C). *Richard K. Mellon*, 12 T. C. 90. Cf. *United Light & Power Co.*, 38 B. T. A. 477; affd., 105 Fed. (2d) 866; certiorari denied, 308 U. S. 574.

Respondent next contends that there was a reorganization under section 112 (g) (1) (D), which reads: "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred * * *." It is clear, of course, that a considerable part of the assets of the predecessor corporation were, under the plan of reorganization, transferred to petitioner. The question is, After the transfer was the predecessor corporation or its shareholders in control of petitioner? It is clear that the transferor corporation was not in control of petitioner because under the plan of reorganization it ceased to exist, but

---

erties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred * * *.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

(h) DEFINITION OF CONTROL.—As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

that fact does not impair the validity of the reorganization. *Estate of John B. Lewis*, 10 T. C. 1080; affd., 176 Fed. (2d) 646.

Were the transferor's stockholders in control of petitioner immediately after the transfer? We think they were. The only requirement of subparagraph (h) is that after the transfer of the assets by the predecessor corporation to the new corporation the predecessor corporation itself or its shareholders must own at least 80 per cent of the voting stock of the new corporation and at least 80 per cent of all other classes of its stock. The facts in the instant case show that immediately after the transfer of the assets from the predecessor corporation to the new corporation approximately 68.93 per cent of the predecessor corporation's old shareholders owned 100 per cent of all of the outstanding and voting stock of the new corporation. Petitioner contends that the conditions of section 112 (g) (1) (D) and (h) were not met because only 68.93 per cent of the stockholders of the predecessor were represented in the transferee corporation (petitioner), some having had their stock redeemed for cash and property, and, therefore, the requisite control or continuity did not exist in the transferee (petitioner). Petitioner contends that the words "its shareholders" appearing in the statute mean 100 per cent of the shareholders of transferor and that the 80 per cent appearing in section 112 (h) of the code, defining control, means 80 per cent of that 100 per cent. We do not think this contention of petitioner can be supported. Section 112 (h) defines "control" as used in section 112 as follows:

\* \* \* the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

In *Toklan Royalty Corporation* v. *Jones*, 58 Fed. Supp. 967; appeal dismissed (CCA–10), 147 Fed. (2d) 987, a reorganization was involved under section 112 (g) (1) (D) of the code, the same provision as that with which we are presently concerned. In that case one of the findings of fact of the court was:

Imperial Royalties Company transferred its principal assets and properties to Toklan Royalty Corporation on April 15, 1940, pursuant to the Plan for the transfer of certain assets to Toklan Royalty Corporation, and on that date 75.5% of the shareholders of Imperial Royalties Company had subscribed to shares of stock in Toklan Royalty Corporation, offered pursuant to said Plan, and 75.5% of the shareholders in Imperial Royalties Company owned, on said date, 100% of the outstanding capital stock of Toklan Royalty Corporation, of all authorized classes. No person who was not a shareholder in Imperial Royalties Company owned any of the outstanding capital stock of Toklan Royalty Corporation on said date.

The court held in that case that there was a nontaxable reorganization under section 112 (g) (1) (D), notwithstanding that only 75.5 per cent of the stockholders of the transferor continued their interest in the successor corporation. The holding of the court was based on the fact that those stockholders of the predecessor corporation represented by the 75.5 per cent owned *all* the stock of the transferee corporation and there was, therefore, the continuing interest required by section 112 (h).

We think that likewise we should hold in the instant case that, notwithstanding that only 68.93 per cent of the stockholders of the predecessor corporation went into the successor corporation, there was a nontaxable reorganization under section 112 (g) (1) (D). This is so because these stockholders who made up 68.93 per cent of the stockholders of the old corporation owned 100 per cent of the stock of the new corporation. Therefore, the continuing interest required by section 112 (h) was fulfilled. It goes without saying that if this 68.93 per cent of the stockholders of the predecessor corporation had owned less than 80 per cent of the stock of the successor corporation (petitioner) there would have been no reorganization, because the 80 per cent control provided in (h) would not have existed.

Respondent also contends that the transfer by the predecessor corporation to petitioner was a reorganization under section 112 (b) (10) of the Code.[2] Petitioner contends that it is obvious that section 112 (b) (10) is not applicable in the instant case; that this section is applicable only to reorganization under 77-B or chapter X of the Bankruptcy Act, wherein control is vested in a corporation's creditors and not its shareholders. In the instant case the petitioner argues that since:

* * * the shareholders were in control and not the creditors, it in no way meets the test of an insolvency reorganization to which Section 112 (b) (10) applies. The section refers to *insolvent* corporations which might be, for purposes of reorganization, in control of creditors. Regulations 111, Sec. 29.112 (b) (10)–1 (added by TD 5402, CB 1944, p. 229, approved Sept. 5, 1944) in referring to Section 110 (b) (10) states, in part,—"The determinative and controlling

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.
(b) EXCHANGES SOLELY IN KIND.—
(10) GAIN OR LOSS NOT RECOGNIZED ON REORGANIZATION OF CORPORATIONS IN CERTAIN RECEIVERSHIP AND BANKRUPTCY PROCEEDINGS.—No gain or loss shall be recognized if property of a corporation (other than a railroad corporation, as defined in section 77m of the National Bankruptcy Act, as amended) is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation—
(A) in a receivership, foreclosure, or similar proceeding, or
(B) in a proceeding under section 77B or Chapter X of the National Bankruptcy Act, as amended,
to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation.

factors are the corporation's insolvency and the effective command by the creditors over its property." The predecessor corporation in the case at bar was not insolvent, its creditors were at no time in control, and its stockholders were at all times in control of the corporation.

Having decided that there was a nontaxable reorganization under section 112 (g) (1) (D), we find it unnecessary to decide whether section 112 (b) (10) is applicable.

The petitioner acquired its oil properties in a nontaxable reorganization. Therefore, it follows that it takes the same basis of cost for its oil properties as its predecessor corporation. The Commissioner's use of percentage depletion in his determination of the deficiencies must be approved.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

DISNEY, *J.*, dissenting: The whole point of this case depends upon the meaning of "its stockholders" in section 112 (g) (1) (D) of the code in defining reorganization. The majority view is that 68.93 per cent of a corporation's stockholders comprises "its stockholders" within the statute. I must disagree. The statutory expression must mean (a) all of the stockholders, or (b) substantially all of the stockholders, or (c) some of the stockholders. Obviously 68.93 per cent is not all, nor substantially all, of those holding stock, and the majority does not so view the matter. It simply concludes that, since 68.93 per cent of the predecessor corporation's old shareholders owned 100 per cent of the outstanding and voting stock of the new corporation, there was reorganization, and cites *Toklan Royalty Corporation* v. *Jones*, 58 Fed. Supp. 967, where it was held that where 75.5 per cent of the old stockholders owned 100 per cent of the stock of the new corporation there was reorganization under section 112 (g) (1) (D) of the code. The case merely states the facts and the above conclusion, without analysis of the question. The majority here, in similarly concluding, does not state whether it considers 68.93 per cent of the stockholders all of them, or only a part. It could not mean the former; if the latter is meant, then it follows that any part, at least any substantial part, of a corporation's stockholders satisfies the statute. But, if so, then say 49 per cent is sufficient, and we might have one part, 49 per cent, reorganizing into one new corporation, and another substantial part, for example, 51 per cent, likewise reorganizing into still another corporation. But since continuity of the corporate organization is of the essence of reorganization, under cases so numerous as to require no collation, more than one reorganized corporation appears impossible—from which it follows that even if "its stockholders" does not necessarily mean full 100 per cent, it must at least mean so

many that another portion could not reorganize into another corporation. It is obvious, I think, that 68.93 per cent of the stockholders does not satisfy such a requirement. Of course the fact that they have 100 per cent control of the transferee corporation is not the test, though it is given controlling weight by the majority—since it is nowhere stated what "its stockholders" does require.

In my opinion, a reading of section 112 (g) of the code discloses at once that Congress never intended that 68.93 per cent of a corporation's stockholders are "its stockholders," for three times in the ten lines of that subsection, when it was desired to express less than *all* of a category, specific language so expressed: (a) "all *or a part*" of voting stock was the expression when less than all was meant; (b) "substantially all" was applied to "properties" when less than all was being required; and (c) "all or a part" was applied to assets when all were not required to be transferred. Can it be reasonably doubted, then, that Congress would likewise in the same subsection (in fact in the same sentence) carefully designate less than all of "its stockholders" if it so intended? This textual analysis is consonant with the underlying idea of the continuity of organization necessary to defer taxation. The statutory scheme is "as a general rule to recognize gain or loss upon the exchange of property and to provide for specific exception in situations which are expressly described." *Union Pacific Railroad Co.*, 32 B. T. A. 383; *Evert A. Bancker*, 31 B. T. A. 14. I do not find place in such a plan for an exchange where under the statute a corporation must be represented by "its stockholders," but only 68.93 per cent take part. I would hold that there was no reorganization under section 112 (g) (1) (D). Therefore, I respectfully dissent.

KERN, LEECH, TURNER, and OPPER, *JJ.*, agree with this dissent.