### REILLY OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 13202.

United States Court of Appeals
Fifth Circuit.

May 22, 1951.

William P. Fonville, Dallas, Tex., for petitioner.

Hilbert P. Zarky, Ellis N. Slack, Helen Goodner, Irving I. Axelrad, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The sole issue in this case is whether the organization of petitioner for review in 1940 as a result of proceedings under Chapter X of the Bankruptcy Act, 11 U.S. C.A. 501 et seq., was a tax free reorganization within the terms of Section 112 of the Internal Revenue Code. 26 U.S.C.A. § 112. The Tax Court, five judges dissenting, held that the transaction came within the terms of the statute and therefore upheld the Commissioner's determination that the petitioner's basis for cost in computing depletion was the cost basis of its predecessor.[1] We affirm the decision of the Tax Court.

The petitioner was organized pursuant to a plan of reorganization of the predecessor corporation under Chapter X of the Bankruptcy Act, directed in all respects by orders of the court in which the proceeding was pending. The court directed the formation of a new corporation and directed the trustee of the bankrupt predecessor corporation to sell a part of its properties and use the proceeds of the sale

1. 13 T.C. 919.

to pay the creditors of the corporation and to purchase, at a price fixed by the court, certain units of property in which the bankrupt had a substantial interest, but in which certain individuals owned direct unit interest. The Court fixed the value of each share of the outstanding stock of the corporation in reorganization and directed in the plan of reorganization that those of the stockholders who so desired might elect to surrender their stockholdings to the predecessor corporation and receive cash at the value fixed by the Court for each share of stock, or could receive stock in the new corporation (the petitioner for review).

In conformity with the plan 164,001.27 of the total of 237,927.21 shares outstanding were surrendered for stock in the new corporation and 48,094.73 shares were surrendered for cash.

The properties in which the corporation owned a substantial interest had been divided into units. The Court fixed a value of each unit and directed the trustee to either purchase the outstanding units for cash or to issue to the owners a proportionate part of the stock of the new corporation in exchange for their units, as the owners should elect. The majority of the units were exchanged for stock in the new corporation; approximately 20 per cent were surrendered for cash; and approximately 17 per cent of the units, plus 25,831.21 shares of stock in the predecessor corporation were exchanged by one Brown for one of the oil wells owned by the corporation.

The new corporation took possession of the assets remaining after the necessary sales and exchange were made, plus the units of interest which were acquired. Shares of stock in the petitioner were distributed among the participating unit holders at values equalling the values of the stock they had owned in the predecessor and the values of the units. No persons other than the stockholders in the predecessor corporation became stockholders in the new corporation. Immediately after the transfer of the assets from the predecessor to the petitioner approximately 68.93 per cent of the predecessor's shareholders owned 100 per cent of the stock of the petitioner.

The Tax Court determined that the facts of the transaction constituted a nontaxable reorganization under Section 112 (g)(1)(D) of the Internal Revenue Code.[2] The petitioner's contention of error centers upon its interpretation of the words "its shareholders" appearing in Section 112 (g)(1)(D) as quoted. It contended in the Tax Court that these words meant 100 per cent of the shareholders of the transferor and in this Court relies upon the argument set forth in the dissenting opinion of five judges of the Tax Court above referred to, which expresses the view that the words must mean (a) all of the stockholders, or (b) substantially all of the stockholders, or (c) some of the stockholders, and that 68.93 per cent of the stockholders can not constitute compliance with the language of the statute, since "even if 'its stockholders' does not necessarily mean full 100 per cent, it must at least mean so many that another portion could not reorganize into another corporation." This latter apparently adopts the test of a majority of the stockholders. Even if so, the present transaction evidences participation and regular control by more than a majority of the shareholders.

The Tax Court gave great weight to the decision in Toklan Royalty Corp. v. Jones, D.C., 58 F.Supp. 967, appeal dismissed by stipulation, 10 Cir., 147 F.2d 856. It

2. Section 112(g)(1)(D): "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred".

Section 112(h): "As used in this section the term 'control' means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

reasoned[3] that since the participation was by 68.93 per cent of the stockholders of the predecessor corporation, who were in control of the successor corporation and owned 100 per cent of its stock the transaction was a nontaxable reorganization. The decision in Miller v. Commissioner, 6 Cir., 84 F.2d 415 recognized that in corporate reorganizations it is only rarely that all of the stockholders participate and declared the failure of 100 per cent of such stockholders to participate in the reorganized corporation not at all fatal to the existence of a tax free reorganization.

We are aware of no authority or valid reason which would support the contention that all or substantially all of the transferor's shareholders must acquire an interest in the corporation before a nontaxable reorganization can be effected.

The conclusion of the Tax Court in this case appears a reasonable one and we will not overturn it. On behalf of the Commissioner, it was contended in the Tax Court that in any event, and unquestionably, the transaction was a nontaxable reorganization under the provisions of Section 112(b)(10) of the Internal Revenue Code.[4] For some reason, doubtless satisfactory to it, the Tax Court considered and determined the transaction in the light of Section 112(g)(1)(D), supra, only. It consequently expressly found no reason for consideration of the applicability of Section 112(b)(10). We therefore, refrain, likewise, since we find that the determination of the Tax Court was correct under the provisions of the statute which it considered. The decision of the Tax Court is

Affirmed.

3. "We think that likewise we should hold in the instant case that notwithstanding only 68.93 per cent of the stockholders of the predecessor corporation went into the successor corporation, that there was a nontaxable reorganization under section 112(g) (1) (D). This is so because these stockholders who made up 68.93 per cent of the stockholders of the old corporation owned 100 per cent of the stock of the new corporation. Therefore, the continuing interest required by section 112(h) was fulfilled. It goes without saying that if this 68.93 per cent of the stockholders of the predecessor corporation had owned less than 80 per cent of the stock of the successor corporation (petitioner) there would have been no reorganization because the 80 per cent control provided in (h) would not have existed."

4. 26 U.S.C.A. § 112(b) (10).