THE WOLF ENVELOPE COMPANY, ET AL., PETITIONERS,* *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25751, 25554, 25555, 25556, 25557, 25558, 25559, 25560.

Promulgated September 28, 1951.

---

*Proceedings of the following petitioners are consolidated herewith: Jennie Littman; Alan L. Littman; Elsa L. Selden; Rhoda L. Affelder; Harry F. Affelder; Doris L. Lux; and Estate of Nathan I. Dryfoos, Deceased, The First National Bank of Miami, Executor.

*Irwin N. Loeser, Esq.*, and *Daniel W. Loeser, Esq.*, for the petitioners.

*Clarence E. Price, Esq.*, for the respondent.

478

OPINION.

TIETJENS, *Judge:* The principal issue concerns the tax effect of an exchange of securities of the Wolf Envelope Company carried out July 1, 1945. There were three types of exchanges, two of which are in controversy. The exchange of class B no par value common stock for new $10 par value common at 20 shares for one is not in question. The challenged exchanges were those in which 5 per cent debenture bonds of the 1945 issue were received. The holders of debenture shares of the 1940 issue exchanged them for debenture bonds of the 1945 issue of the same face amount, but containing terms and conditions substantially different. Also, the holders of class A common shares exchanged such shares for debenture bonds, receiving $175 in face amount of debenture bonds for each share of stock. Respondent contends that the exchanges in which security holders received debentures effected a distribution of earnings and profits accumulated by the Company. The deficiency notices stated that the exchanges resulted in a distribution by the corporation to its stockholders of property, taxable as a dividend, in amounts equal to the fair market value of the debenture bonds, in accordance with the provisions of section 115 (g) (1), Internal Revenue Code.[1]

Section 115 (g) (1) provides that where a corporation cancels or redeems its stock in such a manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed shall be treated as a taxable dividend to the extent that it represents a distribution of accumulated earnings or profits. The respondent says that the Company accumulated profits from many years of successful operation until the major part of its financial structure consisted of undistributed earnings that had been capitalized and that

---

[1] SEC. 115. DISTRIBUTION BY CORPORATIONS.

(g) REDEMPTION OF STOCK.—

(1) IN GENERAL.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

the 1945 exchange effected a distribution reducing the Company's assets by $234,625 and increasing by this amount the assets in the hands of the stockholders.

The petitioners contend that section 112 (b) (3) of the Code is controlling here. Such section provides:

No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation * * *

Under section 112 (g)· (2) (E) a "reorganization" is defined as including a "recapitalization." The petitioners contend that the changes effected in 1945 in the capital structure of the Company constitute a recapitalization within the scope of this provision.

It is plain that stock and debenture shares of the corporation were exchanged for debenture bonds of the same corporation and that the exchange was pursuant to a plan adopted by the board of directors. There appears to be no reason to doubt that the debenture bonds were "securities" within the meaning of section 112 (b) (3). They were 20-year 5 per cent bonds. While the Company reserved the right after 1 year to redeem them in amounts of from two to five per cent annually of the total issued and to redeem all after 10 years on payment of a stipulated premium, long term bonds frequently contain similar provisions. Such provisions do not require treatment of the bonds as short term obligations and therefore not "securities." Cf. *L. & E. Stirn, Inc.* v. *Commissioner*, 107 F. 2d 390, reversing 39 B. T. A. 143.

The term "recapitalization" is not defined in the statute. It has a broad meaning, and has been held to apply to exchanges involving debentures. *Commissioner* v. *Neustadt's Trust*, 131 F. 2d 528, affirming 43 B. T. A. 848. See also *Mutual Fire, Marine & Inland Insurance Co.*, 12 T. C. 1057; *Globe-News Publishing Co.*, 3 T. C. 1199. It has been said to refer to a "reshuffling of a capital structure within the framework of an existing corporation," *Helvering* v. *Southwest Consol. Corporation*, 315 U. S. 829. The exchanges here involved accomplished such a rearrangement of the capital structure. This was a "recapitalization" and hence a "reorganization," within the intent of section 112. See *Edgar M. Docherty*, 47 B. T. A. 462, *Clarence J. Schoo*, 47 B. T. A. 459.

Respondent contends that the exchanges of debentures were without a genuine business purpose of the corporation, and relies on *Bazley* v. *Commissioner*, 331 U. S. 737, and *Adams* v. *Commissioner*, (same citation). In the *Bazley* case, the taxpayer and his wife owned 999 of a corporation's 1,000 shares of stock. Under a plan of reorganization they exchanged each share for five shares of new no-par-value stock and new debenture bonds, payable in 10 years but callable at any

time. In the *Adams* case the taxpayer owned all but a few shares of a corporation's stock, and, pursuant to a purported plan of reorganization exchanged each for one share of new no-par-value stock and one 6 per cent 20-year debenture bond. The capital account was reduced and the book surplus left intact. The Tax Court (4 T. C. 897 and 5 T. C. 351), the Court of Appeals for the Third Circuit (155 F. 2d 237 and 246), and the Supreme Court concluded in both cases that the exchanges were not within the reorganization provisions of section 112, but represented a distribution of profits. The Supreme Court pointed out that a distribution of accumulated earnings obtains no immunity by being cast in the form of a reorganization, that nothing was accomplished by the exchanges that could not have been accomplished by an outright dividend of debentures, and that the provisions of section 112 do not apply unless the new arrangement has the characteristics of a reorganization which underlie the purpose of the Congress in postponing tax upon the securities distributed.

The instant case, unlike the *Bazley* and *Adams* cases, does not involve a corporation which was the alter ego of the taxpayer. No one stockholder here held a majority of the voting shares at any time.

There was a purpose accomplished by these exchanges. It was one which would not have been carried out by an outright dividend of debentures. The sequence of events and trend of interests which led to this transaction are shown in detail in the stipulated facts and are summarized in our stated findings.

The founders of the Company had developed an unusually profitable business. The stock was always closely held and, with only minor exceptions, remained in the possession of the families of the founders. When Affelder and Alan Littman entered the employ of the Company, the founders were enjoying the fruit of their investment and good business fortune. Affelder contributed some inventions and developments and served as superintendent of the Company. Alan Littman became sales manager. These two men succeeded in effecting an increase in the Company's earnings. As a consequence they received employment contracts providing for a fixed salary and additional compensation to be measured by a percentage of the increases they were able to bring about in the profits. The "participation certificates" and the "B" stock issued later, in 1925, carried out this scheme of additional compensation. The "A" stock, replacing the former common, carried a fixed dividend representing the earnings level of the business prior to 1918. The "B" stock was to receive all further dividends. Affelder and Alan Littman received each about 22.5 per cent of this class of stock which gave them a share in the increased earnings and carried voting rights. The remainder of the "B" stock was issued to other holders of "A" stock.

During the years 1935 to 1940 Affelder and Alan Littman were in active charge of the business. The principal holders of "A" stock were generally not participating in the management. Dryfoos, who held nearly 32 per cent of the "A" stock, served as a director and in an advisory capacity. Alan Wolfe and Margaret Namm had inherited the interest of Alfred Wolf and together held about 25 per cent of the "A" stock. Louis Littman's interest was held by his widow Jennie Littman and by the Louis Littman Trust, of which Jennie was life beneficiary, each holding some 17.5 per cent of the "A" stock.

Affelder and Littman sought to improve their own positions with respect to sharing in the earnings and to reduce the burden the business had carried of paying the preferential dividend of $13.20 annually on the class A stock, principally benefiting inactive stockholders. The business had to pay $17,820 each year in dividends on the 1,350 "A" shares held by Dryfoos, Alan Wolfe, Margaret Namm, Jennie Littman, and the Louis Littman Trust, before dividends could be distributed to the active managers upon their "B" shares. This was a cumulative dividend and in adversity might deprive the active managers of dividends except on their comparatively small "A" holdings. At the time of the merger with Wald in 1940 no agreement had been reached on this question. Affelder and Littman negotiated with the "A" stockholders for the surrender of their voting rights and preferential dividend and for retirement of the debenture shares, principally held by "A" stockholders, which were convertible into "B" stock and might thereby dilute the voting power of the "B" stockholders, but did not reach agreement as to the basis until 1945. The recapitalization here involved carried out that agreement.

This exchange of "A" stock for debenture bonds served the purposes of Affelder and Littman by eliminating the "A" stock, with its voting rights and preferential dividend. For each former "A" share with its $13.20 dividend requirement before "B" stock could receive dividends, there was issued $175 in principal amount of debentures, on which $8.75 in interest was to be paid. Also, Affelder and Littman could thereafter engage executive talent with the promise of stock available for the purchase of an interest not subject to the former burden of the preferential dividend. The arrangement served the purposes of the "A" stockholders who were not contributing to the Company's management by giving them a long term interest bearing security in a sound going business in which the management would be more satisfied with the capital structure. The exchange of debenture shares for debenture bonds eliminated the possibility of conversion of shares into "B" stock, thus securing the voting power of the new common stockholders and gave the debenture holders a security free

of restrictions upon transferability. The plan accomplished what all the stockholders had agreed upon. It is a sufficient and valid purpose if the exchange effects a shift in voting rights as between one group of stockholders and another. *Marjorie N. Dean*, 10 T. C. 19, and *Elmer W. Hartzel*, 40 B. T. A. 492. These purposes could not have been carried out by a direct pro rata distribution of debentures such as could have been done in *Bazley, supra*, and *Adams, supra.* While each "A" stockholder had some "B" stock and nearly every "B" stockholder held "A" stock, the holdings were in different proportions and a rearrangement was accomplished among the stockholders effecting alterations in their relationships to each other and to the Company as in the *Dean* and *Hartzel* cases, *supra*. Although the stockholders who received new debentures for "A" stock received securities having a face value in excess of the liquidating value previously assigned to the stock they surrendered, this was still an "exchange" governed by section 112, not a taxable "distribution" within the province of section 115, and the resulting gain, if any, was not "cashed in" at the time. Under the statute its taxability is postponed to a later disposition whereby gain or loss is realized.

Respondent argues that the professed purpose of shifting voting control to the "younger group" was not accomplished, saying that Harry Affelder and Alan Littman are by now elderly men and soon will be "absentee owners" and that Lewis Affelder and E. D. Green, who now are the "younger group" acquired only some three per cent of the voting stock and have little chance of getting more, and argues further that the "B" stockholders, receiving a dividend of $14.50 a year per share, had no reason to complain about the $13.20 per share dividend on the "A" shares. These arguments are beside the point. Harry Affelder and Alan Littman were actively in management since about 1925 and, as the record shows, were still the managers in 1950. Their ages do not appear in the record and there is no evidence to support the respondent's assumption that they are now elderly men or "absentees." They were doing the work and carried a burden in earning a large dividend for the inactive stockholders. Their dividends could be larger if this burden were reduced. The point is that all the stockholders, by agreement, accomplished a change in the corporation's capital structure affecting voting control and the carrying charges ranking prior to the new common stock.

Respondent contends, in the alternative, that section 112 (c) [2] applies. Section 112 deals with recognition of gain or loss and subsection

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

  (c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

    (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property per-

**(b)** thereof applies to exchanges solely in kind. This was an exchange of stock or securities for stock or securities, and, since the exchange was pursuant to a reorganization, section 112 (b) (3) provides that no gain is to be recognized. Section 112 (c) deals with exchanges not solely in kind; that is, where other property or money is received in the exchange. There was no money received here- and no property other than the debentures, which fall within subsection (b) (3) ; hence 112 (c) is not applicable. Respondent points out that in the *Bazley* case, *supra*, the Court observed that even if the transaction were deemed a reorganization, "the facts would equally sustain the imposition of the tax on the debenture under Sec. 112 (c) (1) and (2)." The Court had earlier commented that the debentures "were virtually cash because they were callable at the will of the corporation which in this case was the will of the taxpayer." No such circumstances exist here. The debentures were not callable within 10 years except in small amounts and by lot.

Respondent further argues that, aside from other evidence, the reduction occurring in the Company's surplus as a consequence of this exchange demonstrates that a dividend was distributed. This contention might be pertinent if the transaction were removed from the scope of section 112. We think, however, it falls within the operation of that section and we hold that the exchanges of 1940 debenture shares and "A" stock for 1945 debenture bonds were exchanges of stock or securities for securities pursuant to a plan of reorganization in which, pursuant to section 112 (b) (3) of the Code, no gain or loss is to be recognized.

In view of this conclusion it is not necessary to decide the issue raised in the case of Jennie Littman, Docket No. 25554, with reference to taxing to her the income of the Louis Littman Trust arising from receipt of debenture bonds by the Trust. Also, contested adjustments for medical expense deductions resulting from the increased income determined will now be resolved in favor of the taxpayers in Alan L. Littman, Docket No. 25555, Rhoda L. Affelder, Docket No. 25557, and Estate of Nathan I. Dryfoos, Docket No. 25560.

---

mitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

It appears that issues arising in the case of the Company, Docket No. 25751, which depended upon our conclusion upon the principal issue may be resolved in a computation under Rule 50.

Reviewed by the Court.

*Decision in Docket No. 25751 will be entered under Rule 50.*

*Decisions in the other Docket Nos. will be entered for the petitioners.*