*Decision will be entered under Rule 50.*

ERNEST F. BECHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHESTER H. KENT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF HOWARD I. DOREMUS, DECEASED, LOIS S. DOREMUS, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF ALBERT K. LEE, DECEASED, EDNA E. COSTELLO (FORMERLY EDNA E. LEE), ADMINISTRATRIX, AND EDNA E. COSTELLO (FORMERLY EDNA E. LEE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36378–36381. Filed July 15, 1954.

---

*Daniel G. Yorkey, Esq., Alexander C. Cordes, Esq.,* and *Arthur E. Surdam, C. P. A.,* for the petitioners.

*Francis J. Butler, Esq.,* and *William G. O'Neill, Esq.,* for the respondent.

## OPINION.

Bruce, *Judge:* The issues presented for decision require the determination of the nature of certain corporate distributions under sections 112 and 115 of the Internal Revenue Code. Sponge-Aire, a corporation, distributed $149,000 in cash to its stockholders, retained $482,585.25 to meet outstanding liabilities, and transferred $166,317.24 net to Chandler, a new corporation. Chandler distributed its shares among the stockholders of Sponge-Aire. Respondent determined that petitioners, as stockholders of Sponge-Aire, received the Chandler stock in a tax-free exchange within the purview of section 112 (b) (3), and that the cash received by petitioners represented a "boot" paid out of earnings and profits taxable as an ordinary dividend under section 112 (c) (2), or in any event taxable as a dividend under section 115 (g). Petitioners argue that the transaction did not represent a reorganization within the purview of section 112, and,

if it did, the cash was received as a liquidating distribution and should not be taxed as an ordinary dividend.

Respondent asserts that a reorganization was effected within the purview of either section 112 (g) (1) (C) or (D).[1] For section 112 (g) (1) (C) to be applicable the transfer to Chandler must be found to have constituted "substantially all" of Sponge-Aire's assets. The transfer in question was of all of the capital and earned surplus then possessed by Sponge-Aire. The only assets not conveyed were those earmarked and set aside to pay liabilities of Sponge-Aire in substantially the same amount, the latter being kept in technical legal existence merely for the purpose of applying those assets in the discharge of these liabilities. After the transfer to Chandler, the only asset of value remaining in Sponge-Aire or its stockholders, in the retained assets, was a possible equity which in no event could be more than a trivial amount. It would seem that under these circumstances there was a substantial compliance with section 112 (g) (1) (C). However, a determination to this effect is unnecessary in view of the admission by petitioners that in the light of the decision of this Court in *Reilly Oil Co.*, 13 T. C. 919, affd. (C. A. 5) 189 F. 2d 382, there was literal compliance with section 112 (g) (1) (D). Their insistence is that no statutory reorganization was effected under the doctrine of *Gregory* v. *Helvering*, 293 U. S. 465.

Petitioners agree that there was a sound "business purpose" for the creation of Chandler and the transfer to it of Sponge-Aire's assets. They contend, however, that there is no reorganization where, as in the instant case, the assets were acquired by the transferee corporation with the purpose of carrying on by the new corporation of a business of manufacturing a product different from that manufactured by the predecessor. In our opinion, section 112 (g) cannot be so narrowly construed.

The doctrine of *Gregory* v. *Helvering, supra*, does not support petitioners' contention. There the Supreme Court held (293 U. S. at p. 469), that a reorganization was not effected by

a transfer of assets by one corporaton to another in pursuance of a plan having no relation to the business of either * * * an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, * * *

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (1) and in section 113 (other than subsection (a) (22))—

(1) The term "reorganization" means * * * (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred. * * *

Although the opinion in the *Gregory* case states that a reorganization presupposes an intent to reorganize a business or a part of a business, there is no implication that the business when reorganized must be the same, or even bear any similarity to the business previously conducted. "Reorganization presupposes continuance of business under modified corporate forms." *Cortland Specialty Co.* v. *Commissioner*, (C. A. 2) 60 F. 2d 937, but does not require that the business conducted be the same.

Nor is it material that the business of Sponge-Aire was wiped out by the termination of the war, that it transferred merely assets and not a going business to Chandler, or that the assets acquired by Chandler consisted primarily of cash and assets which were to be converted into cash. The important factor is that Chandler was created to carry on corporate business indefinitely, although with a different line of manufacture from that conducted by its predecessor. Cf. *Lewis* v. *Commissioner*, (C. A. 1) 176 F. 2d 646. In the instant case the reorganization was effected for a sound "business purpose." Corporate business was to be continued indefinitely, and the same shareholders remained in "control" and their investment remained "in solution." Therefore, there was compliance with both the letter and spirit of section 112 (g).

*Morley Cypress Trust, Schedule "B"*, 3 T. C. 84, is closely in point. The Morley Cypress Company having completed its timber operations, resolved to discontinue and surrender its franchise. The State authorized its dissolution. The directors distributed substantially all the assets except 16,000 acres of cutover, low, swampy land for which there was no market. Thereafter, oil was discovered on the 16,000 acres, the Southern Land Products Company was organized, and the land was transferred to it. Southern's shares were distributed to the Morley shareholders who surrendered their Morley shares to Southern for cancellation. The Court held:

The fact that the exchange by the shareholders of their old shares for new was an incident of the liquidation of the old corporation did not deprive the exchange of the character of a reorganization exchange, which in truth it was. We know of no rule of law which requires that a reorganization, otherwise within any of the definitions of section 112 (g) (1), is not to be so regarded because it occurs in the progress of a liquidation. * * *

The Morley corporation had ceased timber operations 12 years prior to the reorganization. It did not have a going business to transfer, only land valuable in the business of the new corporation. The old corporation had been in the timber business. The new corporation was created to enter the oil business. Nevertheless, a statutory reorganization was effectuated. Petitioners argue that the *Morley* case is distinguishable because oil was discovered prior to the reorganization. This factor has no more significance than the hiring of Westcott

by Sponge-Aire prior to the creation of Chandler in order that he might begin preparing for the manufacture of upholstered furniture or Chandler's production of products similar to those of Sponge-Aire in order to liquidate Sponge-Aire's inventories.

Unlike the companies in *George D. Graham*, 37 B. T. A. 623, and *Standard Realization Co.*, 10 T. C. 708, cited by petitioners, Chandler was not created merely to complete the orderly liquidation of the assets transferred to it. It was created primarily to carry on an upholstered furniture business. Also, unlike the company in *Hendee* v. *Commissioner*, (C. A. 7) 98 F. 2d 934, affirming 36 B. T. A. 1327, Chandler transacted "substantial business" and was not availed of simply for the purpose of selling assets, as in *Fairfield Steamship Corporation* v. *Commissioner*, (C. A. 2) 157 F. 2d 321, affirming 5 T. C. 566, certiorari denied 329 U. S. 774.

The *Gregory* case, *supra*, simply barred as a reorganization a transfer of assets from one corporation to another according to "a plan having no relation to the business of either." (293 U. S. at p. 469). There is nothing in the Supreme Court's opinion which intimates that the reconstruction of one business to form another is not clearly within the spirit of section 112. Liability for income tax is determined by transactions giving rise to realized gain or loss. It is not concerned with decisions of the owners of an enterprise to change its manufactured product to one considered more likely to realize a profit. Such decisions are wholly personal to those owning and directing the enterprise and the Treasury is interested only in the profit resulting from such changed activities. As stated in *Electrical Securities Corporation* v. *Commissioner*, (C. A. 2) 92 F. 2d 593, 595:

The purpose of the section is apparent; it was meant to allow businesses to be reconstructed when the resulting interests were substantially unchanged; but it presupposed that the enterprises were in fact businesses; financial, commercial, industrial and the like. * * *

Having determined that the transaction represented a statutory reorganization within the purview of section 112 (g) (1) (D), it follows that the petitioners received the Chandler stock, as contended by respondent, in a tax-free exchange under section 112 (b) (3).[2]

The final issue for decision concerns the nature of the $149,000 cash distribution to the stockholders of Sponge-Aire. Respondent contends that the pro rata share distributed to each petitioner should be

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.
  (b) EXCHANGES SOLELY IN KIND.—
    \*        \*        \*        \*        \*        \*        \*
    (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"taxed as a dividend" under section 112 (c) (2).[3] Petitioners argue that this represented a liquidating distribution and should be taxed as a sale of a capital asset.

Section 112 (c) (2) is not applicable unless the transaction falls within section 112 (c) (1), which provides:

If an exchange would be within the provisions of subsection (b) * * * (3) * * * of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph * * * to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

We cannot agree with the contention of the respondent that the $149,000 in question represented a "boot" received by the stockholders of Sponge-Aire as part of the consideration moving from Chandler to them in its acquisition of the Sponge-Aire properties. The cash in question was never the property of Chandler but was distributed to stockholders of Sponge-Aire in proportion to their stockholdings and distributed prior to the transfer of Sponge-Aire assets to Chandler.

The plan of liquidation in the instant case proposed a series of three distinct distributions in complete liquidation. Each represented a separate "partial liquidation" and a separate "exchange for the stock" of Sponge-Aire under section 115 (c) and (i). The second distribution constituted an exchange of Sponge-Aire's stock "solely for stock" in Chandler. Therefore the requirements of section 112 (b) (3) are satisfied without applying section 112 (c) (1), and that fact specifically bars the use of section 112 (c) (1) for other purposes. See *Wolf Envelope Co.*, 17 T. C. 471. The first distribution of $149,000 in cash, therefore, does not fall within the provisions of section 112 (c) (1) and, hence, is not within section 112 (c) (2).

Although the first and second distributions of cash and stock, respectively, were made only one day apart and pursuant to the same over-all plan, they were nevertheless distinct. They were made at separate times. Each was one of a series of distributions in complete liquidation, but the statute makes each such distribution a separate partial liquidation. The distributions of cash and stock were not a part of the same exchange any more than was the final liquidating distribution made 7 or 8 years later.

---

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.

\* \* \* \* \* \* \*

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

The $149,000 cash distribution does not come within the provisions of section 112 (c) (2) for an additional reason. That section requires that the distribution be "made in pursuance of a plan of reorganization." The cash distribution was the first in a series of three distributions pursuant to a plan of "complete liquidation." The reorganization encompassed only the second in the series of distributions and was merely incidental to the plan of liquidation. Cf. *Morley Cypress Trust Schedule "B," supra.*

Although the $149,000 cash distribution represents a separate partial liquidation under section 115 (c), it must still run the gauntlet of section 115 (g).[4] If that section is properly applied, a distribution equivalent to a dividend should not escape as a capital gain,[5] regardless of whether or not it falls within the provisions of section 112 (c) (2). Cf. *Kirschenbaum* v. *Commissioner*, (C. A. 2) 155 F. 2d 23, certiorari denied 229 U. S. 726.

We have held that the distribution of the $149,000 to Sponge-Aire stockholders was essentially equivalent to the distribution of a taxable dividend. We think this holding is justified under the facts disclosed by the record. The question is one of fact. In *Joseph W. Imler*, 11 T. C. 836, involving this same question, the nature of a distribution, we stated:

> The issue here raised presents a question of fact depending on the circumstances of the particular case. *Rheinstrom* v. *Conner*, 125 Fed. (2d) 790; certiorari denied, 317 U. S. 654. No sole or universally applicable test can be laid down. *Flanagan* v. *Helvering*, 116 Fed. (2d) 937. The statutory provision is couched in broad terms—"at such time and in such manner." Though decided cases are not controlling, they are helpful as indicating what elements have been considered important, viz., the presence or absence of a real business purpose, the motives of the corporation at the time of the distribution, the size of the corporate surplus, the past dividend policy, and the presence of any special circumstances relating to the distribution.

In the *Imler* case we found upon the facts there presented that the distribution was not equivalent to one of a dividend. A similar conclusion was reached in the case of *John L. Sullivan*, 17 T. C. 1420, affd. 210 F. 2d 607, in which the facts were essentially similar.

The *Imler* and *Sullivan* cases are relied on by petitioners but we think the facts of the instant case differ from those there presented to such a substantial extent as to make those decisions inapplicable.

---

[4] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(g) REDEMPTION OF STOCK.—

(1) IN GENERAL.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

[5] See S. Rept. No. 1631, 77th Cong., 2d Sess., 1942-2 C. B. 504, 591.

In both of the cited cases the result of the distribution of cash was a reduction in the capital of the corporation, a condition inconsistent with the theory of a taxable dividend distribution. The recent case of *Zenz* v. *Quinlivan*, (C. A. 6, 1954) 213 F. 2d 914, where substantially the entire accumulated surplus of a corporation was paid out to one stockholder as consideration for the surrender to the corporation of her stock, is likewise distinguishable.

In the instant case the distribution was one wholly from earned surplus. No impairment of capital was involved and the situation of Sponge-Aire following the distribution was similar to that in the case of any corporation making a dividend distribution to its stockholders, to wit, nothing more than a reduction in the amount of its earned surplus. It had, prior to this time, been precluded by the terms of its loan contracts from declaring a dividend although it had desired to do so and had asked and been denied permission. The distribution caused no "contraction of the capital structure." It was not an incident of the transfer of assets of Sponge-Aire to Chandler in the nontaxable reorganization constituting the second step in the liquidation of Sponge-Aire. It was a distribution essential only to the purpose of placing in the hands of certain stockholders of Sponge-Aire the necessary funds to carry out personal and independent transactions by them in the acquisition of certain of the stock interests of other stockholders. After the distribution in question Sponge-Aire possessed its entire capital and a substantial amount in surplus.

We think that under these conditions this distribution must be held as one substantially equivalent to the distribution of a taxable dividend. Cf. *Commissioner* v. *Estate of Bedford*, 325 U. S. 283, *Kirschenbaum* v. *Commissioner*, *supra*. It follows that petitioners are not entitled to treat the amount received by them in this distribution as capital gain taxable under section 117.

*Decisions will be entered for the respondent.*