J. S. ALEXANDER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109492. Promulgated October 25, 1943.

*Frederic Sammond, Esq.*, and *Marcus L. Plant, Esq.*, for the petitioner.

*Carroll Walker, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge*: There is no controversy in this proceeding as to the amount of gain which petitioner had as a result of a distribution of timberlands which he received October 8, 1937, from the Timber Co., being his pro rata part of the distribution on shares of stock which he owned in the Timber Co. The controversy arises as to how much of such gain is to be taken into account in determining petitioner's income tax for the year 1937. Petitioner in his income tax return reported 40 percent of his gain from the distribution as capital gain under the provisions of sections 115 (c) and 117 (a) of the Revenue Act of 1936. The Commissioner determined that the distribution to petitioner in 1937 constituted a distribution in partial liquidation of the Timber Co. and that in accordance with the provisions of section 115 (c), Revenue Act of 1936, 100 percent of petitioner's gain was taxable. Sections 115 (c) and 117 (a) of the Revenue Act of 1936, are printed in the margin.[1]

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

   *    *    *    *    *    *    *

 (c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. For the pur-

The Commissioner does not contend that, when the Timber Co. on August 5, 1937, adopted a plan for its complete liquidation within the two-year period prescribed by section 115 (c), Revenue Act of 1936, the plan was not bona fide. Nor does he contend that the distribution by the Timber Co. in 1937 to its stockholders of its timberlands located in Crook and Jefferson Counties, Oregon, was not fully intended by the Timber Co. to be one of a series of distributions looking to the complete liquidation of the Timber Co. within the two-year statutory period. What respondent does contend is that certain events occurred after the 1937 distribution which made the Timber Co.'s lands in Coos and Lane Counties, Oregon, more accessible to logging and that, owing to these changed conditions, the Timber Co. sold some of these lands and determined to not distribute the land contracts and cash received and the remaining part of the timber to its stockholders in kind but to enter into a plan of reorganization with the Lumber Co. whereby all these remaining assets should be transferred to the Lumber Co. in consideration of 35,000 shares of its common stock, these shares to be distributed to the stockholders of the Timber Co. and the latter company to be dissolved. Respondent contends that this change in plan, which took place in 1939 and was carried out, resulted in no complete liquidation of the Timber Co. under the provisions of section 115 (c), Revenue Act of 1936, and, therefore, the distribution on October 8, 1937, was a distribution in partial liquidation of the Timber Co. rather than one of a series of distributions which resulted in its complete liquidation.

Petitioner freely concedes that there was a change in plan in 1939 but contends that it did not result in the abandonment of the plan formed in 1937 to completely liquidate and dissolve the Timber Co. Petitioner contends that the transfer of the remaining assets of the Timber Co. to the Lumber Co. for 35,000 of the Lumber Co.'s shares and the distribution of these shares to the stockholders of the Timber

pose of the preceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits.

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

     *       *       *       *       *       *       *

40 percentum if the capital assets has been held for more than 5 years but not more than 10 years;

     *       *       *       *       *       *       *

Co. in exchange for the Timber Co.'s 24,640 outstanding shares and the dissolution of the Timber Co. resulted in the complete liquidation of the Timber Co. within the two-year statutory period just as much as if the original plan had been pursued of distributing in kind the lands in Lane and Coos Counties to the stockholders of the Timber Co. We think petitioner must be sustained in this contention.

Whether this exchange in 1939 by the stockholders of the Timber Co. of their 24,640 shares of stock for 35,000 shares of stock of the Lumber Co. was a nontaxable exchange made in a statutory reorganization we do not have before us for decision. The year 1939 is not before us. The facts in the record do not disclose what the Commissioner has done with respect to the taxability of the 1939 transactions. But, assuming that he has determined these latter transactions to have taken place in a nontaxable reorganization, we do not think that such a determination affects the situation as to the 1937 distribution which is before us. That distribution concededly was made in pursuance of a bona fide plan to completely liquidate the Timber Co. within the two-year period provided by the Revenue Act of 1936. There is no contention that this distribution was a part of any plan of reorganization. That complete liquidation of the Timber Co. did actually take place within the two-year statutory period, albeit the latter part of it may have been in pursuance of a plan of statutory reorganization, seems clear. That section 115 (c) contemplates that the complete liquidation of one of the corporations which are parties to a reorganization may occur also seems clear by the language of section 115 (c). The language of that section is in part:

* * * [Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, *but shall be recognized only to the extent provided in section 112.* * * * [Italics ours.]

Therefore, even if it be assumed that the transfer by the Timber Co. to the Lumber Co. in 1939 of all its remaining assets in exchange for 35,000 shares of the Lumber Co.'s stock and the distribution of these shares ratably to the holders of the Timber Co.'s stock and the surrender of their shares followed by the dissolution of the Timber Co. was a nontaxable transaction under sections 112 (b) (3) and 112 (g) of the Internal Revenue Code, it simply means that in accordance with section 115 (c) the gain to the stockholders of the Timber Co. resulting from the complete liquidation of their stock in the Timber Co. is to be computed under section 111, but is to be recognized only to the extent provided by section 112. It would not mean that the liquidation of the Timber Co. is not complete. For a discussion of the

924

meaning of the liquidation of a corporation see *Fred T. Wood*, 27 B. T. A. 162; *Rollestone Corporation*, 38 B. T. A. 1093. Cf. *W. F. Kennemer*, 35 B. T. A. 415; affd., 96 Fed. (2d) 177.

If after the Timber Co. adopted the resolution August 5, 1937, to completely liquidate and made the distribution here in question on October 8, 1937, as one of a series of distributions which were to result in its complete liquidation, its stockholders had determined to not liquidate the corporation but to continue on in business as an active, going concern, then the Commissioner would doubtless be correct in refusing to treat the 1937 distribution as one of a series of distributions made in pursuance of a plan to completely liquidate the corporation within the statutory period of two years, and would doubtless be correct in taxing petitioner on 100 percent of the gain resulting from the 1937 distribution.

But, as we have endeavored to point out, we have no such situation here. In 1939, as a result of the reorganization which took place between the Timber Co. and the Lumber Co., the Timber Co. disposed of its remaining assets, liquidated, and dissolved. This complete liquidation took place within the time specified in the plan, namely, within the statutory period which is "not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan." The first of the series of distributions under the plan was made October 8, 1937. The last was made when the stockholders of the Timber Co., including petitioner, received their pro rata part of the 35,000 shares of the Lumber Co. and surrendered their shares of stock in the Timber Co. for cancellation and the Timber Co. was dissolved. This was not later than December 15, 1939, and was not in excess of two years from the close of the taxable year 1937, which meets the test of section 115 (c). On this issue the Commissioner is reversed.

*Decision will be entered under Rule 50.*