**PEBBLE SPRINGS DISTILLING CO., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 11397.**

United States Court of Appeals
Seventh Circuit.

March 7, 1956.

Rehearing Denied April 4, 1956.

Sidney U. Hiken and Claude A. Roth, Chicago, Ill., Gottlieb & Schwartz, Chicago, Ill., of counsel, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Grant W. Wiprud, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Ellis N. Slack, Lee A. Jackson, Attys., Dept of Justice, Washington, D. C., for respondent.

Before MAJOR, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States

which held that Pebble Springs Distilling Co., the petitioner herein, did not sustain a loss which the petitioner claimed resulted from the sale during 1948 of certain of its noninventory assets to another corporation, the Old Peoria Building Corporation, hereafter referred to as Old Peoria. All of the stock of the latter corporation was owned by the petitioner's principal stockholders, or members of their families, who owned sufficient stock in the petitioner to exercise control over it. Most of the facts involved in this case were stipulated by the parties.

The petitioner was organized in 1945 and on May 4, 1946, began the business of distilling whiskey and other alcoholic beverages. The corporation was authorized to issue one million shares of stock having a par value of $1 per share. One-half of the authorized number of shares were issued. The ownership of the issued shares, the family relationships of the owners, and their corporate positions in the petitioner are shown by the following table.

| Shareholder | Office held in Petitioner and Relationships | Number of Shares Owned |
|---|---|---|
| Robert L. Silberstein | President | 58,534 |
| Helen E. Silberstein | Wife of Robert | 58,633 |
| Willard Silberstein | Brother of Robert | 58,333 |
| Julian B. Venezky | Secretary and Treasurer | 62,322 |
| Madelynn Venezky | Wife of Julian | 58,433 |
| Bernard Venezky | Brother of Julian | 58,333 |
| Lewis P. Weiner | Vice-President | 25,000 |
| Kathryn R. Weiner | Wife of Lewis | 100 |
| | Sub-total | 379,688 |

Public Holdings—
Approximately 657 separate shareholders, none of whom bore to any of the above-named shareholders any of the relationships set forth in Sec. 24(b) (2) of the Internal Revenue Code ... 120,312

| | Total | 500,000 |
|---|---|---|

The directors of the petitioner were Robert L. Silberstein, Lewis P. Weiner, Julian B. Venezky and E. R. Morse.

At a meeting of petitioner's stockholders on January 5, 1948, the president of petitioner, Robert L. Silberstein, reported to the stockholders the precarious condition of the whiskey market, the drastic decline in whiskey prices and the inability of the petitioner to secure sufficient additional funds to continue in the business. He then recommended, on behalf of the directors, that the company therefore be dissolved. Pursuant to the recommendation of the directors, the stockholders authorized the directors to dissolve the corporation and to liquidate its assets. The stockholders further authorized the directors to sell petitioner's plant and equipment at public auction and to distribute the proceeds of the sale and the other assets of the petitioner pro rata among the stockholders.

At that time the petitioner had a large inventory of whiskey, a part of which was distributed pro rata among the stockholders and the inventory value thereof credited to the inventory accounts on petitioner's books. At the same time the directors authorized the sale at auction of petitioner's noninventory assets, consisting of the distillery,

fixtures, machinery, good will and labels, the auction to be held at the petitioner's plant on May 20, 1948. Timely notices of this auction were sent to all of the petitioner's stockholders, and the auction was also widely publicized by display advertisements in various newspapers and by brochures mailed to all of the petitioner's stockholders and to others who might be interested.

One week before the date of the auction the petitioner's principal stockholders held a meeting which they say was for the purpose of considering what action might be taken to insure a sale of the plant at auction, and to prevent a sacrifice sale. They say that as a solution of this problem they decided to organize another corporation on behalf of which a bid of $242,080 would be made for the noninventory assets of the petitioner in the event that no one else made a bid of at least that amount.

Pursuant to that agreement Old Peoria was organized. Due to an improper choice of a corporate name the certificate of incorporation was not issued until June 5, 1948. A pre-organization subscription agreement stated that the Old Peoria Building Corporation was to be "organized for the purpose of purchasing the real estate and equipment from the Pebble Springs Distilling Co." and "for such other purposes as the incorporators may determine." By that agreement all of the members of the Silberstein, Venezky and Weiner families, who together owned the majority of the stock of the petitioner, and Ellen S. Weiner, the Weiners' daughter, agreed to subscribe and pay for all of the shares of the new corporation. The stated purposes for which Old Peoria was formed included the dealing in real estate and personal property useful or convenient in the carrying on of the real estate business and of the business of a distiller, rectifier and wholesale dealer in alcoholic and nonalcoholic beverages and the manufacture, sale and distribution of whiskey and other types of alcoholic beverages.

Many of the petitioner's stockholders and other persons were present at the auction but the only bid that was made was by Robert L. Silberstein. He, on behalf of Old Peoria, which was still in the process of organization, bid $242,080 for all of the petitioner's noninventory assets. The auctioneer gave the usual opportunity for other bids but no other bid was made. The auctioneer therefore closed the auction in the usual manner and made an entry in his auctioneer's catalogue showing that the entire property offered was sold for $242,080 to Robert L. Silberstein, "his nominee or nominees." The published terms of this auction provided that any bid accepted by the auctioneer was subject to acceptance or rejection by the owners. On June 9, 1948, petitioner's board of directors adopted a resolution which provided that the auction sale was "in all respects ratified, confirmed and approved." The property so sold was duly conveyed and transferred to Old Peoria on June 15, 1948. After the purchase of petitioner's plant and equipment, Old Peoria rented parts of the plant for dead storage to several different tenants, but it did not, prior to the Tax Court hearing, engage in any way in the business of distilling whiskey or other alcoholic beverages. After declaring a final liquidating dividend, the petitioner was finally dissolved on November 15, 1950.

The depreciated book value of the petitioner's noninventory assets which were sold to Old Peoria was $793,508.54. On its income tax return covering the year of the sale the petitioner claimed a loss of $551,428.54. The Tax Court held that the transactions above described, culminating in the transfer of the auctioned property to Old Peoria, constituted a nontaxable reorganization under Section 112(b) (3) and (g) (1) (D) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b) (3) and (g) (1) (D) (1945), and that therefore no loss could be claimed on the transfer.

Section 112(g) defines "reorganization" as "a transfer by a corporation of all or a part of its assets to another

corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred." Section 112(h) defines "control" as used in this section as meaning "the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

■ There was more than sufficient evidence in this case to support the finding by the Tax Court that the transfer by the petitioner of its noninventory assets to Old Peoria constituted a reorganization within the meaning of this section. Eighty-seven and one-half per cent of the entire stock of Old Peoria was owned by members of the Silberstein, Venezky and Weiner families who also owned 75.9 per cent of the stock of the petitioner. The remaining 12½ per cent of the Old Peoria stock was owned by Ellen Weiner, the daughter of Lewis and Kathryn Weiner. The ownership of 87½ per cent of the stock of Old Peoria by the owners of 75.9 per cent of the stock of the petitioner brings this case clearly within the definition of reorganization found in Section 112(g) (1) (D) of the 1939 Internal Revenue Code.

■ To constitute a tax free reorganization under Section 112(g) (1) (D) of the Code it was not necessary that the persons who owned the stock of the transferee corporation should also have owned 80 per cent of the stock of the transferor corporation. In Toklan Royalty Corp. v. Jones, D.C., 58 F. Supp. 967, the court held that there was a tax free reorganization where persons owning less than 80 per cent of the stock of the original corporation owned all of the stock in the successor corporation. An appeal from this decision was dismissed per stipulation, 10 Cir., 147 F.2d 856. This decision was followed in Reilly Oil Co. v. Commissioner, 5 Cir., 189 F.2d 382.

■ Nor was it fatal to the contention of the Commissioner that the property was bid in by Robert L. Silberstein "for his nominee or nominees" before Old Peoria was organized. The sale of the auctioned property was not actually made, under the published terms of the auction, until the bid was accepted by the owner—the petitioner. The board of directors of the petitioner in a special meeting on June 9, 1948, four days after the Old Peoria charter was issued, confirmed and approved the auction sale; and on June 15, 1948, they conveyed all of the property involved to Old Peoria, just as the owners of the majority of the stock of the petitioner and the owners of all of the stock of Old Peoria had contemplated and planned. It was, of course, not required that the plan of reorganization be in any particular form or be in writing. Ketler v. Commissioner, 7 Cir., 196 F.2d 822. N was it necessary that there be a transfer of all of the petitioner's assets to Old Peoria. In Lewis v. Commissioner, 1 Cir., 176 F.2d 646, at page 649, the court said: "Nor does the statute make the amount of property transferred to the new corporation a decisive factor in determining whether a reorganization took place." See also Becher v. Commissioner, 2 Cir., 221 F.2d 252. In Morley Cypress Trust v. Commissioner, 3 T.C. 84, the original corporation distributed most of its assets in liquidation and finally transferred a remaining tract of land to a new corporation. This transfer of the remaining tract of land to the new corporation was held to be a nontaxable reorganization. To the same effect see also the decision in Alexander v. Commissioner, 2 T.C. 917. In Lewis v. Commissioner, supra, the court also said, 176 F. 2d at page 649: "The liquidation of the old company does not change matters because a statutory reorganization may encompass as one of its incidents the liquidation of one of the corporations a party to the reorganization. [Citing cases.]"

■ In opposition to the decision of the Tax Court, the petitioner insists that the following findings of the Tax Court

were without any support in the evidence (petitioner's brief, page 20):

"(a) that petitioner's controlling stockholders 'decided that should no bid exceeding $242,080 be made for the noninventory assets at the auction, they would purchase those assets for that sum and utilize them in the business of a newly organized corporation'; (b) that Old Peoria 'was still a going concern at the date of the hearing'; and (c) that petitioner's 'controlling stockholders decided to acquire a part of the old corporation's [i. e., the petitioner's] assets and formed a new corporation [i. e., Old Peoria] to effect the transfer; thereafter the old corporation was dissolved, and the new corporation continued to carry on a business * * *.'"

It is true that there was conflicting evidence on some of these questions. Julian B. Venezky, one of the principal stockholders and a director of the petitioner, was an attorney. He was also one of the incorporators of Old Peoria and most of the testimony for the petitioner was given by him. He testified that the principal stockholders of the petitioner prior to the auction had agreed to organize a corporation to be known as the Old Peoria Building Corporation for the purpose of buying petitioner's property which was to be sold at auction and that, pursuant to that arrangement, he had prepared a pre-organization subscription agreement. He testified that Old Peoria paid the purchase price of the auctioned property in cash and by the assumption of certain debts of the petitioner. Venezky said further that he, Silberstein and Weiner devoted their full time to the business of the petitioner.

While petitioner insists that there was no evidentiary basis for the Tax Court's finding that Old Peoria "was still a going concern at the date of the hearing" before the Tax Court, Mr. Venezky testified as to Old Peoria that: "We have rented these buildings out for storage, 20 or 25 concerns * * * and they pay rent * * *." Venezky thus furnished evidence that Old Peoria was still "a going concern" at the time of the hearing, as the Tax Court found. The property sold at the auction consisted of a completely equipped distillery situated on a plot of 2.2 acres of ground, with buildings having floor space of more than 46,000 square feet. The plant contained adequate equipment for a daily production of 14,400 proof gallons of whiskey. As we have pointed out above, the property purchased by Old Peoria was sufficient for it to have immediately started distilling whiskey.

The stockholders of Old Peoria now say that they never intended to distill whiskey in this plant. But in the pre-organization subscription agreement they said that the purpose of organizing Old Peoria was to purchase the real estate and equipment of the petitioner and "for such other purposes as the incorporators may determine." In the articles of incorporation, the incorporators, including Mr. Venezky, stated that one of the purposes of the corporation was "to manufacture, buy, sell and deal in * * * whiskey of all kinds * * * and to do and perform all kinds of distilling * * *." In the articles of incorporation they also estimated that during the first year after its incorporation Old Peoria would do $50,000 of business. Certainly the incorporators would not have estimated this amount of business if they had then intended that their only business would consist of renting dead storage space. Silberstein, Weiner and Venezky all signed the articles of incorporation of Old Peoria and swore that the statements contained therein were true. Under these circumstances the Tax Court, of course, had a right to accept the sworn statements of the incorporators of Old Peoria as to their purposes in incorporating and in buying the assets of the petitioner, rather than their later contention that their sole purpose was "to protect petitioner's 657 public shareholders."

Section 112(a) (3) of the Code recognizes a transfer as tax free only when

there is an exchange solely of stock or securities of "a corporation a party to a reorganization," in pursuance of the plan of reorganization, for stock or securities in such corporation or in another corporation a party to the reorganization. Section 112(b) (4) provides that no gain or loss shall be recognized if a corporation a party to the reorganization exchanges properties, pursuant to a plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. But Section 112(c) provides that if property other than stock or securities be involved in such a transaction any gain shall be limited to that the other party received. Section 112(e) provides that on such an exchange no loss shall be recognized.

An analysis of all of the evidence in this case and of the relevant sections of the Code convinces us that there was a proper basis for the conclusion of the Tax Court that on the transfer here in question the claimed loss by the petitioner could not be sustained.

The judgment of the Tax Court is Affirmed.