Edwards Motor Transit Company, Transferee v. Commissioner.
Edwards Motor Transit Co. v. Commissioner
Docket No. 4212-62.
United States Tax Court
T.C. Memo 1964-317; 1964 Tax Ct. Memo LEXIS 21; 23 T.C.M. (CCH) 1968; T.C.M. (RIA) 64317; December 10, 1964
Arthur L. Berger, 300 N. Second St., Harrisburg, Pa., for the petitioner. Edward L. Newberger, for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: The respondent determined deficiencies in The Susquehanna Company's income tax for the years and in the amounts as follows: Year
Amount
1957
$ 270.00
1958
18,938.20
1959
62,407.37
Respondent further determined that petitioner, as transferee of the assets of The Susquehanna Company, was liable in the amounts of $270.00, $18,938.20, and $62,407.37 *23 for the foregoing deficiencies. The issues presented for our decision are: (1) whether certain advances made by petitioner Edwards Motor Transit Company to its parent and sole stockholder, The Susquehanna Company, during 1958 and 1959 constituted loans or dividend distributions; (2) in the event we hold that the advances made by petitioner to The Susquehanna Company in 1958 and 1959 constituted loans, whether upon the consummation of the merger of The Susquehanna Company into Edwards Motor Transit Company on December 31, 1959, there was a cancellation or forgiveness of indebtedness resulting in the realization of ordinary income by The Susquehanna Company; and (3) whether The Susquehanna Company is entitled to deduct interest in the amount of $6,000 for each of the years 1957, 1958, and 1959. Additional issues presented by the pleadings have been disposed of by stipulation of the parties. All of the facts have been stipulated and are found accordingly. Petitioner Edwards Motor Transit Company, sometimes hereinafter referred to as Edwards or petitioner, is a transferee of The Susquehanna Company, sometimes hereinafter referred to as Susquehanna or the parent corporation. Edwards *24 was incorporated under the laws of the State of Pennsylvania on May 24, 1921. Its principal place of business is located at Williamsport, Pennsylvania. The Susquehanna Company filed its income tax returns and the returns of Edwards for 1957, 1958, and 1959 with the director at Scranton, Pennsylvania. Issues 1 and 2. Advances From Subsidiary to Parent and Forgiveness of Indebtedness. At all times here pertinent petitioner was engaged in the business of intercity bus transportation. Its operations covered the area bounded generally by Cleveland, Buffalo, Pittsburgh, New York City, and Philadelphia. Edwards was subject to regulation by the Interstate Commerce Commission and the Pennsylvania Public Utility Commission. Susquehanna, until its merger with Edwards on December 31, 1959, was a holding company. In 1946 the outstanding stock of petitioner consisted of 50 shares of common stock having a par value of $100 per share. All of said stock was owned by J. Wesley Edwards and Ferris J. Edwards who were brothers. In 1946 petitioner's stockholders were approached by representatives of A. C. Allyn and Company, Incorporated, a Chicago brokerage firm, which desired to acquire on behalf *25 of itself and a group of associates, sometimes hereinafter referred to as the Allyn group, a controlling interest in Edwards as part of a nationwide bus system it was trying to establish. As a result of the negotiations conducted between the Edwards brothers and the Allyn group, Susquehanna was organized under the laws of the State of Delaware on May 10, 1946, by J. Wesley Edwards and Ferris J. Edwards. The Edwards brothers transferred the 50 shares of Edwards stock owned by them to Susquehanna and received in exchange 120,000 shares of the common stock of Susquehanna having a par value of $1 per share and 4,250 shares of 6 percent cumulative preferred stock having a par value of $100 per share. Throughout its corporate existence Susquehanna was the sole owner of all the capital stock of Edwards. Susquehanna did not engage in any income-producing activities and apart from the stock of Edwards it did not own any income-producing investments. J. Wesley Edwards and Ferris J. Edwards sold all of their 4,250 shares of Susquehanna preferred stock and 80,000 shares of their Susquehanna common stock to the Allyn group on June 21, 1946, for $525,000. They retained 40,000 shares of Susquehanna *26 common. On September 27, 1946, 500 shares of the preferred stock held by the Allyn group were redeemed by Susquehanna. On November 27, 1946, the remaining 3,750 shares of Susquehanna preferred stock held by the Allyn group were redeemed. The funds for the redemption were obtained by Susquehanna by the issuance of 1,750 shares of 6 percent cumulative preferred stock, second series, having a par value of $100 per share, and 4 percent serial debenture bonds having a face value of $200,000. The 6 percent cumulative preferred stock, second series, and the 4 percent serial debentures were sold by Susquehanna in equal amounts to Atlantic Life Insurance Company of Richmond, Virginia, and Modern Woodmen of America of Rock Island, Illinois. All of the debentures were retired by Susquehanna prior to 1955. The Allyn group continued to hold 80,000 of the 120,000 outstanding shares of Susquehanna common until 1949. On June 6, 1949, the Allyn group sold its 80,000 shares of Susquehanna common stock to J. Wesley Edwards, Ferris J. Edwards, Robert W. Edwards, William H. Edwards, and Charles Denny for $20,000. The financial structure of Edwards at the time of the reacquisition of control of the *27 parent corporation by the Edwards family and Charles Denny on June 6, 1949, was considerably different from the financial setup that had existed when the Allyn group bought 80,000 shares of Susquehanna common stock in 1946. Petitioner's net income (after taxes) had declined from $127,083.51 in 1946 to $13,539.50 in 1949. The outstanding preferred stock of Susquehanna and the debentures issued by it imposed certain requirements which indirectly restricted the capital structure and financial growth of Edwards and tended to depress the dividend potential of Susquehanna insofar as its common stockholders were concerned. Under an amended certificate of incorporation filed June 6, 1949, The Susquehanna Company was prevented from paying dividends on its common stock unless the combined working capital of Edwards and Susquehanna amounted to at least $100,000. Susquehanna's amended certificate also provided for a sinking fund for the annual retirement of part of its outstanding 6 percent cumulative preferred stock, second series, requiring that either $5,000 a year or 50 percent of the consolidated net income of Edwards and Susquehanna, whichever was greater, be set aside and credited to the *28 sinking fund. In addition the amended certificate required Susquehanna to establish a separate bank account for the sinking fund and to make deposits into that account before April 30 of each year. Under the amended certificate Susquehanna was required to deposit in its sinking fund account $13,075.53 by April 30, 1958 and $16,459.92 by April 30, 1959, for the retirement of part of its preferred stock. The amounts set aside annually for the sinking fund were in addition to the 6 percent annual dividend requirement on the preferred stock. Susquehanna's "Certificate of Designations, Preferences and Special Rights and the Qualifications, Limitations, and Restrictions" relating to its preferred stock provided that in the event preferred dividends were in default for four quarters, or in the event of a default in the annual retirement of a portion of the preferred stock, the preferred shareholders were entitled to elect a majority of the board of directors of the parent corporation. Prior to June 6, 1949, the annual salaries paid by Edwards to its three principal officers were as follows: Ferris J. Edwards, $33,000; J. Wesley Edwards, $33,000; and Charles Denny, $10,000. As a result *29 of the salary restrictions imposed by Susquehanna's amended certificate of incorporation, the salary of each of the above-named officers of Edwards was reduced to $8,500 a year and continued at that rate as long as Susquehanna's preferred stock remained outstanding. After the death of J. W. Edwards in 1956, Robert W. Edwards replaced him as president of Edwards at the same salary. Susquehanna's amended certificate of incorporation also contained restrictions which curtailed both it and Edwards from incurring funded indebtedness without the approval of Susquehanna's preferred stockholders. Between 1951 and 1958 the parent corporation made several successful applications to its preferred stockholders to permit by their waiver of the restrictions the borrowing by Edwards under terms which did not comply with the restrictions imposed by the amended certificate of incorporation. The schedule below sets forth the outstanding shares of 6 percent cumulative preferred stock, second series, and 4 percent serial debentures outstanding during the period from 1946 to 1959, inclusive, and the number of shares of preferred redeemed and the amount of debentures retired in each year: 6% cumulative
preferred stock
second series
4% serial
debentures
Out-
Redeemed
Out-
Redeemed
standing
during
standing
during
Year
at end
year
at end
year
1946
1,750
0
$200,000
0
1947
1,692
58
160,000
$40,000
1948
1,592
100
120,000
40,000
1949
1,494
98
90,000
30,000
1950
1,444
50
70,000
20,000
1951
1,394
50
50,000
20,000
1952
1,346
48
30,000
20,000
1953
1,296
50
10,000
20,000
1954
1,246
50
0
10,000
1955
1,196
50
0
0
1956
1,148
48
0
0
1957
1,098
50
0
0
1958
968
130
0
0
1959
0
968
0
0
*30 All of the preferred stock redemptions, except the redemption on June 22, 1959, were made in accordance with the redemption requirements. The June 22, 1959, redemption was made in accordance with the preferred stock provision permitting calls. During all of the years 1957, 1958, and 1959, the outstanding common stock of Susquehanna consisted of 120,000 shares of common stock having a total par value of $120,000. The common stock was owned as follows: Shareholder
Shares
Estate of J. Wesley Edwards (after April
15, 1958, Trust under the Will of J.
Wesley Edwards for the benefit of
his wife, Martha H. Edwards, and his
sons, William H. Edwards and Rob-
ert W. Edwards)
69,600
Ferris J. Edwards
39,150
Charles A. Denny
3,750
William H. Edwards
3,750
Robert W. Edwards
3,750
A summary of Susquehanna's temporary loans payable account (to Edwards Motor Transit Company) for the years 1949 through 1959 is as follows: Outstand-
Funds
Repayments
ing at
received
made
beginning
during
during
Year
of year
year
year
1949
0
$17,000
$ 12,000
1950
$ 5,000
19,000
24,000
1951
0
16,250
10,000
1952
6,250
16,350
22,600
1953
0
14,500
14,500
1954
0
16,100
10,000
1955
6,100
11,200
10,000
1956
7,300
11,175
12,000
1957
6,475
12,000
18,475
1958
0
30,000
14,000
1959
16,000
88,000
104,000
*31 The net income after taxes of Edwards Motor Transit Company for the years 1946 through 1959 was as follows: Net income
Year
after taxes
1946
$127,083.51
1947
51,887.43
1948
25,092.62
1949
13,539.50
1950
31,899.89
1951
1,446.01
1952
25,882.55
1953
30,293.72
1954
4,251.76
1955
2,566.57
1956
21,520.88
1957
43,002.99
1958
66,349.40
1959
75,209.84
Total
$520,026.67
The dividends paid by Edwards to Susquehanna, its sole stockholder, during the years 1946 through 1959, were as follows: Dividends
Year
paid
1946
$ 65,304
1947
75,000
1948
70,000
1949
15,000
1950
25,000
1951
10,000
1952
25,000
1953
25,000
1954
10,000
1955
12,000
1956
15,000
1957
25,000
1958
14,000
1959
None
$386,304
During 1958 Susquehanna became a personal holding company within the meaning of section 542 of the Internal Revenue Code of 1954. It was also a personal holding company during 1959. On December 11, 1958, the board of directors of Edwards held a special meeting. The minutes of the meeting stated in pertinent part as follows: The chairman reported that the final figures for the year 1958 *32 were not as yet available but he anticipated when the final figures were available the net result would show a profit in excess of $60,000.00. He stated that our parent company, The Susquehanna Company, had certain commitments and their only source of revenue is from dividends received from this company. He further stated that up to the present time this company has made advances on an open account to The Susquehanna Company in the total amount of $14,000.00. He further stated, however, that The Susquehanna Company would have commitments the early part of next year which would require additional money from this company in order to meet them. It was his opinion at the present time that it would require a total of $30,000 to repay Edwards Motor Transit Company the amount already advanced, plus future commitments within the next few months. Therefore, after considerable discussion, upon motion duly made by C. A. Denny, seconded by W. H. Edwards, it was RESOLVED, That a dividend of $14,000 be and the same is hereby declared on the common stock to the shareholders of record on December 1, 1958, payable on or before December 31, 1958. Also, on motion duly made by C. A. Denny, seconded *33 by W. H. Edwards, it was RESOLVED, That a loan on open account in the amount of $16,000.00 be made to The Susquehanna Company on or before December 31, 1958, with the understanding that upon receipt of the $16,000.00 loan The Susquehanna Company would repay the present loan to Edwards Motor Transit Company in the amount of $14,000. On December 22, 1958, Edwards advanced Susquehanna $30,000. The payment initially was recorded on the books of both corporations as a dividend payment. On December 23, 1958, Susquehanna repaid Edwards $14,000 on its open account. After the repayment of $14,000 to Edwards, the $16,000 balance remaining out of the above-described $30,000 advance was recorded on the books of the parent corporation in its "Temporary Loans Payable" account. On its books, Edwards changed the $16,000 balance due from Susquehanna to "Advances - Associated Companies." The book net worth of Susquehanna on December 31, 1958, was $407,430.49, and the book net worth of Edwards on that date was $418,676.30. On April 28, 1959, Edwards advanced an additional $4,000 to Susquehanna. Petitioner listed the foregoing payment on its books as "Advances - Associated Companies." and the *34 parent corporation recorded it under its "Temporary Loans Payable" account. At a meeting held on May 5, 1959, attended by Charles A. Denny, William H. Edwards, and Ferris J. Edwards, who comprised a majority of the directors of both Susquehanna and Edwards, and the attorney and accountant representing Susquehanna and Edwards, it was decided to take the steps necessary to merge the two corporations. The possibility of Susquehanna retiring all of its outstanding preferred stock and the method of obtaining funds to redeem its preferred stock were discussed at that time. On June 1, 1959, Susquehanna redeemed 162 shares of its 6 percent cumulative preferred stock, second series, in accordance with the periodic redemption requirements contained in its amended certificate of incorporation. On June 12, 1959, Edwards borrowed $60,000 from West Branch Bank and Trust Company of Williamsport, Pennsylvania. The minutes of a special meeting of Edwards' board of directors held on that date stated in part: The chairman reported that the loan previously authorized to be made from the West Branch Bank and Trust Company, in the amount of $60,000.00, had just been closed earlier in the day. *35 The chairman further reported that The Susquehanna Company had advised that it will need approximately $84,000.00 by June 22nd to retire their outstanding preferred stock. Therefore, upon motion made by W. H. Edwards and seconded by Harry P. Burke, it was RESOLVED, That a loan on open account in the amount of $84,000.00 be made to The Susquehanna Company on or before June 22, 1959. Susquehanna's board of directors likewise held a special meeting on June 12, 1959, the minutes of which stated in part as follows: The Chairman then reported that Edwards Motor Transit Company has advised that they have completed finances to supply capital sufficient to call the Preferred Stock and will be able to furnish same. Thereupon, after discussion, it was, on motion duly made, seconded and unanimously carried RESOLVED, To borrow the sum of $84,000.00 from Edwards Motor Transit Company to retire the 806 shares of Preferred Stock at $102.50, plus accrued dividends; the balance of the loan, if any, to be used for regular corporate purposes. It was further RESOLVED, To authorize Chas. A. Denny, Treasurer, to call in the outstanding Preferred Stock at $102.50 per share as of June 22, 1959, plus *36 pro rata accrued dividends from May 1, 1959 to June 22, 1959 at $.85 per share, or a total of $685.10. On June 22, 1959, Edwards, in accordance with the above resolution, advanced $84,000 to Susquehanna. The foregoing $84,000 advance was recorded on the books of the parent corporation as "Temporary Loans Payable," and on petitioner's books as "Advances - Associated Companies." This amount was used by Susquehanna to redeem its remaining 806 shares of outstanding preferred stock on June 22, 1959. On November 5, 1959, the boards of directors of both corporations adopted resolutions authorizing the merger of Susquehanna into Edwards. On November 6, 1959, the two corporations executed an agreement of merger. The shareholders of both corporations held special meetings on November 15, 1959, at which resolutions were adopted approving the merger. In response to Edwards' application for approval of its new capital structure, the Public Utility Commission of Pennsylvania entered an order on December 14, 1959, granting its approval. The State of Pennsylvania and the State of Delaware each approved the merger on December 31, 1959, and each issued a certificate of merger on that date. *37 On December 31, 1959, immediately prior to the merger, the book net worth of Susquehanna was $288,768.66, and the book net worth of Edwards was $532,308.29. The merger of Susquehanna into Edwards was consummated on December 31, 1959, at which time Susquehanna transferred all of its assets to Edwards which, in turn, assumed all of the liabilities of its former parent corporation. The assets of Susquehanna which were transferred to petitioner consisted of a tax refund claim, which it listed on its books as an account receivable in the amount of $754.62, and the outstanding stock of Edwards, which the parent corporation had carried on its books at $575,000. The liabilities appearing on the books of Susquehanna which, on December 31, 1959, were transferred to petitioner included a "Temporary Loans Payable" account in the amount of $103,485.96 [1] owed by it to Edwards. Edwards reflected the same outstanding loans on its books as "Advances Payable - Associated Companies" in the amount of $103,485.96. Following the merger, Edwards set off on its books the above-mentioned advances payable account in the amount of $103,485.96 against Susquehanna's temporary loans payable account in the same *38 amount which it had assumed in the merger. In accordance with the agreement of merger, Edwards issued 120,000 shares of its common stock to the shareholders of Susquehanna in exchange for the 120,000 shares of Susquehanna common stock which they held. In his notice of deficiency the respondent determined that Susquehanna in 1958 and 1959 received dividend distributions in the amounts of $16,000 and $87,485.96, [2] respectively, from Edwards Motor Transit Company which the parent corporation did not report on its income tax returns for those years. Petitioner contends that the above-mentioned advances constituted loans by Edwards *39 to Susquehanna rather than dividend distributions. The character of the advances in question depends upon the intention of the corporate parties at the time the advances were made, as gleaned from the particular circumstances surrounding the transactions. Wiese v. Commissioner, 93 F. 2d 921, affirming 35 B.T.A. 701, certiorari denied 304 U.S. 562; Chism's Estate v. Commissioner, 322 F. 2d 956, affirming a Memorandum Opinion of this Court; Carl L. White, 17 T.C. 1562. Where, as here, the recipient is a controlling stockholder in the corporation making advances, such control calls for close scrutiny of the transactions. W. T. Wilson, 10 T.C. 251. In support of his contention that the advances involved were in fact dividend distribution rather than loans, the respondent points to the facts that Susquehanna did not execute any promissory notes, gave Edwards no security, and was not required to pay any interest on the advances. However, despite these facts, we are convinced from an examination of the record that petitioner and its parent corporation intended the advances in the amounts of $16,000 and $87,485.96 *40 made during 1958 and 1959, respectively, to represent temporary loans rather than permanent withdrawals of the funds of Edwards. Among the facts which lead us to so conclude are the following: Throughout the period 1949 through 1958 the parent corporation depended in part upon short-term loans from its wholly-owned subsidiary, Edwards, to finance Susquehanna's considerable obligations to its preferred stockholders. During that period petitioner loaned Susquehanna a total of $147,575, in addition to the advances involved herein. All such transactions were recorded on the books of the parent corporation as temporary loans payable, and all such loans were repaid by Susquehanna within not more than 2 years. At the beginning of 1958, the first year here in question, there was no outstanding balance due petitioner from its parent. The minutes of Edwards clearly disclose that two of the advances here in question were expressly authorized by its board of directors as loans prior to the time of disbursement. With the exception of the apparently erroneous initial entry on the books of Edwards recording as a dividend the $30,000 advance made December 22, 1958, whereas its directors had *41 intended that $16,000 thereof was to be a loan, the books of both corporations clearly and consistently reflect all three of the advances in question as loan transactions. It is clear from the circumstances here present and from the minutes of meetings of the directors of petitioner held December 11, 1958, and June 12, 1959, as well as the minutes of a meeting of Susquehanna's directors held June 12, 1959, that the advances in issue were made solely for corporate purposes. Susquehanna was a holding company which had been created at the insistence of the Allyn group upon acquiring control of petitioner from the Edwards brothers in 1946. As such, it was dependent upon petitioner as its sole source of income. During the years 1946 through 1959, Edwards paid out nearly three-fourths of its net earnings as dividends to Susquehanna. In addition, as noted above, petitioner frequently made short-term loans to its parent to enable it to meet its commitments to its preferred stockholders. Edwards alone was the operating company and for all practical purposes the burdensome restrictions imposed upon Susquehanna by its preferred stockholders relating to dividends, redemption, borrowing, and *42 salary payments applied to petitioner as well. It is clear that the $16,000 advance made to Susquehanna on December 22, 1958, was for the purpose of enabling it to meet its forthcoming commitment to make a sinking fund deposit in approximately that amount by April 30, 1959, to be used for the redemption of the required portion of its outstanding preferred stock. The $4,000 advance made on April 28, 1959, appears to have been made for the same purpose. The $84,000 advance made by Edwards to its parent on June 22, 1959, quite clearly was intended for the redemption by Susquehanna of its remaining 806 shares of outstanding preferred stock which, in fact, were retired on that date. The fact that during the years 1946 through 1959, inclusive, Susquehanna caused Edwards to pay out 74.3 percent of its total net earnings to its parent as dividends (not including the amounts here in question), together with the fact that Susquehanna as of the beginning of 1958 had repaid petitioner every dollar of a total of $133,575 which had been advanced as short-term loans during the years 1949 to 1957, inclusive, constitutes strong evidence that the advances in question were not intended as substitutes *43 for conventional dividend distributions. Further, it appears that at the time the advances were made Susquehanna had the financial ability to repay the loans within a reasonable period of time. The book net worth of the parent corporation on December 31, 1958, was $407,430.49, and on December 31, 1959, immediately prior to its merger with Edwards, Susquehanna's book net worth was $288,768.66. By virtue of its ownership of petitioner, Susquehanna had complete control of the earnings of a successful intercity transit company, the net profits (after taxes) of which during 1957, 1958, and 1959 were $43,002.99, $66,349.40, and $75,209.84, respectively. Finally, we would stress here the fact that all of the advances in question were repaid in full by Susquehanna on December 31, 1959, at the time of its merger with Edwards, or approximately 1 year after the first of the three intercompany transactions in issue was made. See George S. Groves, 38 B.T.A. 727. The respondent, however, denies that these advances were repaid and claims that, assuming a bona fide debt ever existed, what actually transpired when the merger was consummated was a cancellation or forgiveness of Susquehanna's *44 obligation to Edwards, rather than a discharge or payment thereof. In so contending, the respondent advances an alternative contention that, even if the intercompany advances constituted genuine loans originally, a subsequent cancellation thereof occurred on December 31, 1959, resulting in an informal dividend distribution by Edwards to its parent corporation at that time. He does not dispute, however, that the "downstream" merger of Susquehanna into Edwards constituted a nontaxable reorganization under section 368(a)(1)(A) of the 1954 Code, [3] as clearly would appear because - (1) There unquestionably occurred a statutory merger under the laws of both Pennsylvania and Delaware. (2) The elimination of the holding company (Susquehanna), especially in view of its personal holding company status and the burdensome requirements imposed by its preferred stockholders, constitutes a sufficient business purpose. Commissioner v. Gilmore's Estate, 130 F. 2d 791, *45 affirming 44 B.T.A. 881. (3) Inasmuch as approximately 87 percent of the value of Susquehanna's assets was returned to its former common stockholders in the form of common stock in Edwards and the previous owners of Susquehanna's common acquired a 100 percent equity interest in the surviving corporation, the continuity of interest requirement quite obviously was satisfied. [4]Helvering v. Minnesota Tea Co., 296 U.S. 278; Pebble Springs Distilling Co. v. Commissioner, 231 F. 2d 288, affirming 23 T.C. 196. James G. Murrin, 24 T.C. 502. The respondent argues, rather, that petitioner should not be permitted to utilize a tax-free reorganization as an instrument of tax avoidance, citing Commissioner v. Sansome, 60 F. 2d 931, *46 reversing 22 B.T.A. 1171, certiorari denied 287 U.S. 667, a decision requiring the surviving corporation in a nontaxable reorganization to carry over the earnings and profits account of its transferor corporation. We previously were faced with a closely parallel situation in Arthur L. Kniffen, 39 T.C. 553. There, the taxpayer had borrowed $44,625.79 from his controlled corporation (Kniffen Subdivision Sales, Inc.) which was reflected on its books as an account receivable. On March 31, 1957, he transferred all of his sole proprietorship assets and liabilities, including the $44,625.79 liability owing to the corporation, to Kniffen Subdivision Sales, Inc., in exchange for more than 80 percent of its stock. The total liabilities exceeded by $8,246.58 the adjusted basis of the assets transferred. The corporation agreed to assume all of the taxpayer's liabilities which were thus transferred to it. Immediately after the exchange Kniffen Subdivision Sales, Inc., removed from its books the above-mentioned account receivable in the amount of $44,625.79. The Commissioner there contended that the exchange resulted in the cancellation by the transferee *47 corporation of the taxpayer's $44,625.79 indebtedness to it, and that such cancellation constituted "other property or money" within the meaning of section 351(b), thereby rendering section 351(a) inapplicable to the exchange. In rejecting the Commissioner's contention, we there stated: It is obviously correct, as the respondent contends, that from the standpoint of contractual liability there is a basic difference between an "assumption" of liability and a "discharge" of liability. But here the discharge of the liability results from its assumption. Where, as here, a debtor transfers his debt obligation to his creditor for a valid consideration, the interests of the two parties are merged and the indebtedness immediately is extinguished. Citizens' Trust Co. v. Going, 288 Mo. 505, 232 S.W. 996; Wonderly v. Giessler, 118 Mo. App. 708, 93 S.W. 1130; Wright v. Anderson, 62 S.D. 444, 253 N.W. 484; see 6 Williston, Contracts, secs. 1865, 1875 J (1938 ed). The $44,625.79 liability owing by petitioner to the corporation could not have been discharged had it not been that Kniffen Subdivision Sales, Inc., first assumed it. Absent the assumption, the *48 interests of the parties would not have merged and the indebtedness would not have been extinguished. * * *
To the extent of $36,379.21, petitioner paid in assets a pro tanto portion of the $44,625.79 liability in question (the indebtedness owing by him to the corporation) and the resulting liability excess of $8,246.58 represents gain taxable to him for the year in issue. * * * We accordingly held that the transaction there in question fell within the purpose and policy of Congress in enacting section 351 of the 1954 Code, and resulted in the nonrecognition of gain to the taxpayer, except to the extent the transferred liabilities exceeded the adjusted basis of the assets, as provided by section 357(c)(1). Similarly in Estate of Helen Gilmore, 40 B.T.A. 945, the taxpayer's decedent had withdrawn $124,904 from a corporation of which he owned practically all the outstanding stock. The withdrawal was never repaid, canceled, or released. Upon the subsequent dissolution of the corporation, its assets, including the outstanding indebtedness due from its principal stockholder, were distributed in liquidation to the taxpayer and the other stockholders. The Commissioner *49 there contended that the taxpayer, upon receipt of the outstanding account receivable from the corporation as a liquidating distribution, realized ordinary income because, it was argued, the corporation had canceled or forgiven the indebtedness. We there refused to so characterize the transaction, stating as follows at pp. 946-947: There is, however, no evidence from which any finding of fact could be made that there was at any time a forgiveness of this indebtedness, and the evidence is sufficient to show that no such forgiveness occurred. This has been found as a fact. The respondent, however, would have the Board hold that there was a constructive forgiveness by reason of the fact that the debt was never paid and was wiped out by the liquidation of the corporation. The evidence establishes that all of the corporation's assets were distributed and that the Burridge account receivable was treated as an asset. This, however, can not fairly be regarded as a forgiveness of the debt. It was an item of the liquidation proceeds. Although the effect upon Burridge's estate was similar, in that the estate was saved the inconvenience of actually paying the amount and receiving it back in *50 distribution, nevertheless the occurrence was entirely a recognition of the subsistence of the debt and the distribution of the account to its shareholders. From both a practical and a theoretical standpoint, this is the proper conception of the final disposition of the indebtedness. * * * Here, as in Estate of Helen Gilmore, supra, there is no indication whatever that the creditor, Edwards, forgave or canceled the outstanding advances it had made to Susquehanna. The facts that the advances appeared on the books of the parent corporation as temporary loans payable immediately prior to the merger and that Edwards assumed the temporary loans payable account as an existing liability of Susquehanna pursuant to the contract of merger, clearly establish that the creditor and debtor recognized the existence of the obligation, as was true in Estate of Helen Gilmore, supra. At the time petitioner made the $84,000 advance to Susquehanna on June 22, 1959, it undoubtedly contemplated that within a few months thereafter the parent corporation would transfer back to Edwards all of Susquehanna's assets. In the meantime the parent corporation was enabled to utilize the *51 funds advanced to redeem its outstanding preferred stock which created certain obligations that Edwards otherwise would have had to assume as part of the merger. Under the contract of merger executed by the two corporations, Susquehanna agreed to transfer all of its assets to petitioner, which, in turn, agreed to assume all of the liabilities of its parent and to distribute Edwards stock to the Susquehanna stockholders in exchange for their shares in the parent corporation. Thus, the debtor corporation, Susquehanna, transferred all of its assets to Edwards, the creditor, as consideration for petitioner's agreement to assume all the outstanding liabilities of the parent and otherwise to consummate the merger. In support of his contention that the merger of the two corporations did not amount to a repayment by Susquehanna of its outstanding temporary loans payable accounts to Edwards, respondent places considerable reliance upon Harter v. Helvering, 79 F. 2d 12, reversing 30 B.T.A. 572. There, the Boxboard Products Company withdrew $3,322,987.50 from its wholly-owned subsidiary, Philadelphia Paper Manufacturing Company, in return for its note. The funds *52 which were so obtained, during September 1926, were used by the Boxboard Company to redeem all of its outstanding preferred stock. Approximately 3 1/2 months later, on December 15, 1926, the Boxboard Company liquidated its subsidiary, acquiring all of its assets and canceling the note issued in the amount of $3,322,987.50. The Court of Appeals held that the withdrawal by the Boxboard Company was but the first step in the liquidation of the subsidiary and did not constitute a loan but a dividend distribution. The Court pointed out that the parent could not have intended to repay $3,322,987.50 out of dividends received from the subsidiary and that the debtor corporation (Boxboard Company) transferred no assets whatever to its creditorsubsidiary and, therefore, did not attempt to repay any part of the amount withdrawn. Rather, the flow of assets was directed the other way via the liquidation. Unlike the situation presented in Harter v. Helvering, supra, here the debtor corporation (Susquehanna) transferred all of its assets to its creditor (Edwards). Just prior to the merger the book net worth of Susquehanna was $288,768.66, an amount more than sufficient to repay the *53 outstanding advances totaling $103,485.96. The transfer by the parent corporation of its assets to Edwards on December 31, 1959, constituted payment of the outstanding liabilities, including the advances in issue, just as surely as if Susquehanna had made payment in cash, as we pointed out in Arthur L. Kniffen, supra, and as was suggested in Estate of Helen Gilmore, supra.[5]
The assumption by Edwards (as creditor) of the liabilities of its parent for a valid consideration pursuant to a nontaxable merger of the debtor and creditor *54 corporations results in a recognition of the existence of the debt, a merger of their interests, and a consequent extinguishment of the outstanding indebtedness. Arthur L. Kniffen, supra. We accordingly find that the merger of Susquehanna and Edwards on December 31, 1959, resulted in the satisfaction of the advances here involved, rather than a cancellation or forgiveness thereof, as the respondent claims. Under the circumstances presented here we do not think that the absence of promissory notes, security, or interest charges destroys the fundamental character of the advances as genuine loans. It is not unusual for a corporation to lend money to its sole stockholder without demanding security, or interest, or issuing notes. See Victor Shaken, 21 T.C. 785; Jas. J. Gravley, 44 B.T.A. 722; George S. Groves, supra. In view of the minutes and book entries of Edwards and Susquehanna, the consistently substantial dividend payments made by petitioner to Susquehanna, the pattern of short-term advances made by Edwards to its parent corporation which consistently have been repaid, the obvious corporate purpose for the advances in issue, *55 and the complete satisfaction thereof by Susquehanna pursuant to the merger of the two corporations on December 31, 1959, we are of the opinion that the advances here involved represented bona fide loan obligations rather than dividend distributions, and we so hold. Issue 3. Interest Deduction During 1949 the common stockholders of Susquehanna made advances to that corporation on the dates and in the amounts as follows: Date of ad-
vancement
Advanced
1949
Sum advanced by
amount
April 30
J. Wesley Edwards
$16,000
April 30
Ferris J. Edwards
9,000
June 1
J. Wesley Edwards
53,600
June 1
Ferris J. Edwards
30,150
June 1
Charles A. Denny
3,750
June 1
Robert W. Edwards
3,750
June 1
William H. Edwards
3,750
The above-listed advances totaling $120,000 were made by the common stockholders of the parent corporation in proportion to their stock ownership therein. Each of the common stockholders of the parent corporation received a promissory note covering the amount advanced by him. The notes issued had a maturity of 1 year and recited that interest was payable to the holder at the rate of 5 percent per annum. Susquehanna issued new notes *56 each year except that in 1958 notes were issued to cover both 1958 and 1959. All of the notes recited that the repayment of principal and interest was subject and subordinate to the prir payments of the principal and interest due on Susquehanna's outstanding 4 percent serial debentures and also was subject to the cumulative dividend and retirement requirements on its 6 percent cumulative preferred stock, second series. On its books Susquehanna accrued interest at the rate of $6,000 per year. The corporation never paid any part of the principal or accrued interest to the noteholders. As of December 31, 1959, the aggregate accrued liability upon the notes for unpaid interest appearing on Susquehanna's books totaled $63,600. On its income tax returns for the years 1957, 1958, and 1959, Susquehanna claimed a deduction in the amount of $6,000 each year for interest accrued on the promissory notes issued to its common stockholders. In his notice of deficiency the respondent disallowed in full the deduction so claimed for the years 1957, 1958, and 1959. Petitioner contends that the aforementioned advances made by Susquehanna's common stockholders to that corporation in 1949 and *57 evidenced by promissory notes constituted bona fide indebtedness throughout the years in issue and that the $6,000 amounts accrued on the books of the parent corporation during 1957, 1958, and 1959 represented deductible interest under section 163(a) of the 1954 Code. [6]
The respondent has taken the position that the advances made by Susquehanna's common stockholders to it in 1949 do not represent genuine indebtedness by that corporation to its noteholders but in fact constituted permanent working capital. Petitioner has not established that the respondent was in error in so determining. The advances were made entirely by the common stockholders of the parent corporation and were in amounts exactly in proportion to their stockholdings in Susquehanna. See 1432 Broadway Corporation, 4 T.C. 1158, affd. 160 F. 2d 885. The purpose of the advances is not disclosed by the record. The notes issued by the parent corporation to its common stockholders as evidence of the advances made by them expressly provide *58 that they are subordinate to the obligations due Susquehanna's preferred stockholders as well as the holders of its debenture bonds. The entire amount of the advances made to Susquehanna by its common stockholders in 1949 totaling $120,000 has remained at the disposal of that corporation throughout the period 1949 through 1959, inclusive, and, insofar as appears from the record, no part of the principal amount thereof has ever been repaid, nor has Susquehanna ever paid to the noteholders any part of the $6,000 amounts annually accrued on its books as interest. Under the foregoing circumstances it seems quite clear to us that the common stockholders of Susquehanna have in effect placed their money at the risk of its business. Since in our opinion the instruments in question are in fact evidences of equity investments in the parent corporation, we are unable to find that a bona fide debtorcreditor relationship was established between it and its controlling stockholders. We therefore hold that the $6,000 amounts annually accrued on the books of Susquehanna during 1957, 1958, and 1959 did not represent interest within the meaning of section 163(a) of the 1954 Code, and such amounts *59 are not deductible by it for any of the years in issue. See Gooding Amusement Company, 23 T.C. 408, affd. 236 F. 2d 159; United States v. South Georgia Ry. Co., 107 F. 2d 3; and Jewel Tea Co. v. United States, 90 F. 2d 451. Decision will be entered under Rule 50. Footnotes
1. This amount consisted of the $16,000 advance made by Edwards to Susquehanna on December 22, 1958, the $4,000 advance made on April 28, 1959, and the $84,000 advance made June 22, 1959, less a cash transfer of $514.04 made on December 28, 1959, by the parent corporation to petitioner in anticipation of the merger.↩
2. Consisting of the $4,000 advance made by petitioner to Susquehanna on April 28, 1959, and the $84,000 advance made on June 22, 1959, less the cash transfer of $514.04 made by the parent corporation to Edwards on December 28, 1959.↩
3. SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS. (a) Reorganization. - (1) In General. - For purposes of parts I and II and this part, the term "reorganization" means - (A) a statutory merger or consolidation;↩
4. The fact that as an integral part of the plan of merger Susquehanna's outstanding preferred stock having a total par value of $80,600 was redeemed so that the interests of its preferred shareholders were terminated, does not adversely affect the nontaxable character of the reorganization. Reilly Oil Co. v. Commissioner, 189 F. 2d 382, affirming 13 T.C. 919↩.
5. In Rev. Rul. 59-296, 1959-2 C.B. 87, the Commissioner has adopted a similar view in a situation where a debtor-subsidiary is liquidated by its creditor-parent corporation: Where a fully solvent parent corporation owns all the stock of a subsidiary and is also the subsidiary's bona fide creditor for cash advances in an amount greater than the fair market value of all the subsidiary's assets, the transfer of all the debtor-subsidiary's assets to the creditor-parent in a transaction which is a merger or consolidation under the applicable state statutes is a transfer made in satisfaction of indebtedness. * * *↩
6. SEC. 163. INTEREST. (a) General Rule. - There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.↩